908 N.E.2d 1176 (2009)
In the Matters of N.S. & J.M.
Indiana Department of Child Services, Appellant-Petitioner,
v.
T.S. and S.B., and C.L., and B.M., Appellees-Respondents.
No. 32A05-0902-JV-78.
Court of Appeals of Indiana.
June 30, 2009.
*1177 Jon R. Rogers, Department of Child Services, Hendricks County Office, Avon, Indiana, Robert J. Henke, Department of Child Services, Central Administration, Indianapolis, IN, Attorneys for Appellant.
Paula M. Sauer, Danville, IN, Attorney for Appellees.

OPINION
BRADFORD, Judge.
In this consolidated appeal, Appellant-Petitioner the Indiana Department of Child Services ("DCS") challenges the trial court's orders that DCS pay the Guardian Ad Litem ("GAL") fees associated with the underlying Child in Need of Services ("CHINS") proceedings. Specifically, DCS contends Indiana statutory authority dictates that the county, not DCS, is responsible for the payment of GAL fees. Concluding that Indiana Code sections 31-40-3-2 (2008) and 33-24-6-4 (2008) indicate that fees associated with services provided by the GALs are to be paid by the county, we reverse the judgment of the trial court and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
The facts in each of the underlying CHINS cases are as follows:

In re the Matter of N.S. ("JC-1")
N.S. was removed from his mother's care immediately following his birth on January 8, 2009, because his mother tested positive for cocaine upon her admission to the hospital. N.S.'s mother admitted that she had used cocaine and marijuana throughout her pregnancy. N.S.'s mother also admitted that the same allegations had been levied against her in Marion County upon the birth of another child. In addition, N.S.'s alleged father was unavailable to care for N.S. because he was incarcerated two days after N.S.'s birth.
On January 12, 2009, the trial court conducted an emergency detention hearing. At the conclusion of the emergency detention hearing, the trial court determined that there was probable cause to believe that N.S. was a CHINS, appointed a GAL, and ordered DCS to pay a $300.00 preliminary GAL fee. DCS subsequently appealed the trial court's order that it pay the preliminary GAL fee.

In re the Matter of J.M. ("JC-2")
J.M. was removed from his parents' care on January 21, 2009, because his parents were arrested, in the presence of J.M., during a traffic stop. At the time of their arrest, J.M.'s parents were allegedly intoxicated and were in possession of illegal narcotics. Both parents had a substantiated DCS history in Marion County dating from July 2008, and J.M.'s mother had an outstanding warrant for her arrest in the State of Florida.
On January 22, 2009, the trial court conducted an emergency detention hearing. At the time of the emergency detention hearing, both of J.M.'s parents remained in police custody. Upon the *1178 conclusion of the emergency detention hearing, the trial court determined that there was probable cause to believe that J.M. was a CHINS, appointed a GAL, and ordered DCS to pay a $300.00 preliminary GAL fee. DCS subsequently appealed the trial court's order that it pay the preliminary GAL fee.

Consolidation of JC-1 and JC-2 on Appeal
On February 26, 2009, DCS filed a motion to consolidate JC-1 and JC-2 for the purpose of appeal because both cases present a common question of law pursuant to Indiana Rule of Appellate Procedure 38(B). This court granted DCS's request on March 17, 2009. This consolidated appeal follows.

DISCUSSION AND DECISION[1]

I. Historical Overview: A Change in the DCS System
Historically, the decision as to what services to order in a CHINS proceeding was left solely to the discretion of the trial court. The trial court could consider recommendations by the local child welfare services office and representatives for the child in determining which services would be beneficial to the child. Any services ordered were paid for by the county fiscal body through the local child welfare services office. See Ind.Code § 12-19-7-1 (2007) (providing that all costs of services were required to be paid by a county). However, in 2008, the Indiana General Assembly enacted House Enrolled Act 1001 ("HEA 1001"), which in part sought to raise the level of the quality of services provided in CHINS, termination of parental rights ("TPR"), and delinquency cases by shifting the funding burden from local government to the State in exchange for more influence by DCS in recommending services. Pursuant to HEA 1001, effective January 1, 2009, DCS was granted the authority to recommend services and placements in all CHINS, TPR, and delinquency cases. Ind.Code §§ 31-34-4-7, 31-34-19-6.1 (2008). Under HEA 1001, if, in any particular case, the trial court disregards DCS's recommendations and orders services or placements other than those recommended by DCS, the county's fiscal body may become responsible for funding any and all services ordered by the trial *1179 court in that matter. Ind.Code §§ 31-34-4-7, 31-34-19-6.1. However, the new statutory provisions enacted by the General Assembly do not specifically state whether the burden of paying the fees associated with GALs and court appointed special advocates ("CASA") shift to the State under HEA 1001.

II. Importance of GALs and CASAs to Indiana Children
Initially, we note that there is no question that GALs and CASAs are integral participants in looking after the best interests of the children who become entangled in our court system either through CHINS, TPR, or delinquency proceedings. The General Assembly has also indicated, through statute, its belief that GALs and CASAs are integral participants in looking after the best interests of children who are subjected to our court system. A GAL is an attorney, a volunteer, or an employee of a county program who is appointed by the trial court to represent and protect the best interests of a child and to provide the child with services requested by the court, including researching, examining, advocating, facilitating, and monitoring the child's situation. Ind.Code § 31-9-2-50 (2008). A CASA is a community volunteer who has been appointed by the trial court to represent and protect the best interests of a child, and in doing so may research, examine, advocate, facilitate, and monitor a child's situation. Ind.Code § 31-9-2-28 (2008).
Generally, the appointment of a GAL or a CASA is left to the discretion of the trial court. See Ind.Code § 31-32-3-1 (2008) (providing that the juvenile court may appoint a GAL or CASA for a child at any time). However, the General Assembly has indicated that, under some circumstances, the trial court is required to appoint a GAL or a CASA to represent the child's best interest. See Ind.Code § 31-34-10-3 (2008). Furthermore, DCS is required to request that the trial court appoint a GAL or a CASA whenever a child is taken into custody without a court order. Ind.Code § 31-34-2.5-4 (2008).
Here, N.S. was taken into the custody of DCS, upon his birth, without a court order because his mother tested positive for cocaine upon being admitted to the hospital. N.S.'s mother also admitted that she had used both cocaine and marijuana throughout her pregnancy. Indiana Code section 31-34-10-3(1)(B) provides that the trial court shall appoint a GAL or CASA, or both, if the child is alleged to be a CHINS because the child was born with narcotics in his system. During N.S.'s emergency detention hearing, the trial court appointed a GAL to represent N.S.'s best interests.
J.M. was also taken into the custody of DCS without a court order because both of his parents were arrested for being intoxicated and in the possession of narcotics following a traffic stop during which J.M. was present in the vehicle. Indiana Code section 31-34-10-3(2)(A) provides that the trial court shall appoint a GAL or CASA, or both, if the child is alleged to be a CHINS because of the inability of the child's parents to supply the child with the necessary food, clothing, shelter, medical care, education, or supervision. J.M.'s parents, who remained in police custody as of the date of J.M.'s emergency detention hearing, were undoubtedly unable to supply J.M. with the necessary food, clothing, shelter, medical care, education, or supervision while in police custody. During J.M.'s emergency detention hearing, the trial court again appointed a GAL to represent J.M.'s best interests.
DCS concedes that the trial court properly appointed GALs to represent the best interests of N.S. and J.M. Because the appointment of the GALs is uncontested, *1180 the only question before this court is whether DCS or the county should be held responsible for payment of any fees associated with the appointment of the GALs.

III. Payment for the Services Provided by GALs

A. Standard of Review
The parties dispute the applicable standard of review on appeal. DCS claims that the instant matter presents a question of statutory interpretation and, as such, a de novo standard of review applies. The Appellees, alternatively, claim that DCS is appealing from a negative judgment and thus DCS must show that the evidence points unerringly to a conclusion opposite that reached by the trial court. Because our conclusion in the instant matter is contingent upon our interpretation of the statutes relating to the funding of GALs and CASAs in conjunction with HEA 1001, we conclude that the applicable standard of review is de novo.
Statutory interpretation is a question of law reserved for the court and is reviewed de novo. De novo review allows us to decide an issue without affording any deference to the trial court's decision. When a statute has not previously been construed, such as [Indiana Code sections 31-40-3-2 and 33-24-6-4], our interpretation is controlled by the express language of the statute and the rules of statutory construction. Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature.
Shaffer v. State, 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003) (citations omitted). "The cardinal rule of statutory construction is that if a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning." Vanderburgh County Election Bd. v. Vanderburgh County Dem. Cent. Comm., 833 N.E.2d 508, 510 (Ind.Ct.App. 2005).

B. Who Should Pay?

1. Indiana Code § 31-40-3-2
DCS argues on appeal that Indiana Code section 31-40-3-2 clearly states that the GAL fees shall be paid by the county. We agree.[2] Indiana Code section 31-40-3-2, which relates to the payment of fees associated with services provided by GALs and CASAs, provides that:
The fiscal body of the county shall appropriate money from: (1) the guardian ad litem fund; or (2) the court appointed special advocate fund; to the juvenile courts of the county for use by the courts in providing guardian ad litem or court appointed special advocate services and the costs of representation for the guardians ad litem or court appointed special advocates.
Nothing in Indiana Code section 31-40-3-2 appears to contemplate the possibility that DCS should bear the burden of paying GAL or CASA fees. Indiana Code section 31-40-3-2 unambiguously provides that the county shall pay the fees associated with services provided by GALs and CASAs and, as such, we must apply its plain and clear meaning. See Vanderburgh *1181 County Election Bd., 833 N.E.2d at 510.
In addition, we note that the General Assembly did not amend Indiana Code section 31-40-3-2 to shift the burden of paying GAL and CASA fees to DCS when it adopted HEA 1001, which shifted the burden of the payment of other services from the county to DCS. The General Assembly could have shifted the burden of paying fees associated with the services provided by GALs and CASAs to DCS had it so intended, but its failure to do so suggests that the General Assembly intended for the burden to pay fees associated with services provided by GALs and CASAs to remain with the county.
Despite the plain language of Indiana Code 31-40-3-2 and the General Assembly's failure to shift the burden of paying such fees to DCS upon adopting HEA 1001, the Appellees claim that Indiana precedent supports the trial court's ruling that DCS shall bear the burden of paying for the GAL's services. In support, the Appellees rely on In re the Matter of J.C., 735 N.E.2d 848 (Ind.Ct.App.2000), in which a panel of this court concluded that a statutory basis existed to order the predecessor of DCS, the local child welfare service office, to pay fees associated with services provided by the GAL. 735 N.E.2d at 849. However, in deciding J.C., this court did not explore the General Assembly's intent regarding the payment of GAL or CASA fees in light of Indiana Code section 31-40-3-2. Indeed, it determined that the local child welfare service office had waived its argument relating to statutory provisions appearing to suggest that the General Assembly had intended for the county to pay for services provided by GALs and CASAs. Further, prior to the General Assembly's adoption of HEA 1001, the local child welfare service office was funded in large part, if not entirely, by the county. Therefore, the court's determination that there was a statutory basis to hold the local child welfare service office liable for the payment of such fees was in harmony with Indiana Code section 31-40-3-2. Having already determined that here, DCS has not waived any argument relating to Indiana Code section 31-40-3-2, and in light of the overhaul to Indiana's child welfare system which transferred the burden of funding DCS from the county to the State, we find J.C. to be distinguished from the instant matter.
Further, to the extent that the Appellees argue that the applicability of Indiana Code section 31-40-3-2 hinges on evidence that a county has created a GAL or CASA fund and that here, no evidence has been presented suggesting that Hendricks County has created such a fund, we observe that Indiana Code section 31-40-3-2 does not contain any limiting language such as "if such fund exists" or "if the county decides to create such a fund." Rather, Indiana Code section 31-40-3-2 states that "the fiscal body of the county shall appropriate money ... to the juvenile courts ... for use by the courts in providing [GAL] or [CASA] services." (Emphasis added). We do not find this language to be contingent on the existence of a GAL or CASA fund, but rather an obligation by the county to provide funds to pay for services provided by GALs and CASAs. In addition, we observe that if we were to adopt the Appellees' position, it would undoubtedly be detrimental to children statewide because counties could, in order to escape the burden of paying for these services, simply refuse to create a GAL or CASA fund, which, in turn, could eventually lead to a shortage of GALs or CASAs available to represent Indiana children in need of a GAL's or CASA's services.

*1182 2. Indiana Code § 33-24-6-4
The Appellees argue that to the extent that the county may be held liable for paying the fees arising from services provided by GALs or CASAs, Indiana Code section 33-24-6-4 indicates that the county is liable to pay these fees only if it has created a GAL or CASA fund. Thus, because DCS presented no evidence suggesting that such a fund exists in Hendricks County, the burden to pay GAL or CASA fees cannot be placed on the county. We disagree.
Indiana Code section 33-24-6-4 does not stand for the proposition suggested by the Appellees, but rather provides that the division of state court administration may establish an office of GAL and CASA services, which the General Assembly may appropriate funds to, as it sees fit. If the General Assembly chooses to appropriate funds to the GAL and CASA services office, the division of state court administration shall provide matching funds to counties that implement and administer a GAL or CASA program. Ind.Code § 33-24-6-4. The counties may then use these funds to supplement their GAL and CASA programs. Ind.Code § 33-24-6-4. Thus, the State's duty to provide matching funds to Indiana counties to help supplement their GAL or CASA programs is contingent upon a decision by the General Assembly to fund the office of GAL and CASA services. We also find it instructive that Indiana Code section 33-24-6-4 provides for "matching funds" to help "supplement" the funds which are appropriated or collected by the county to finance services provided by GALs or CASAs. The General Assembly's use of the terms "matching funds" and "supplement" suggests, in harmony with our interpretation of Indiana Code section 31-40-3-2, that the General Assembly intended for the onus of financial support for GAL and CASA programs to lie with the county, and not the State.

3. Alternative Considerations
DCS also argues that even if the GAL fees could be attributed to the State, DCS did not recommend or approve the GALs' services and therefore is not obligated to pay for the GALs' services. See Ind.Code section 31-40-1-2 (2008). However, having concluded that Indiana Code section 31-40-3-2 provides that the county fiscal body shall appropriate money to pay for the GALs' services, we need not consider DCS's claim that the services provided by GALs or CASAs must be approved or recommended by DCS before the State accepts the burden of payment under Indiana Code section 31-40-1-2. Likewise, we need not consider DCS's claim that payment of such fees would severally hinder DCS's ability to protect and provide services to Indiana's children in need.

CONCLUSION
Having concluded that Indiana Code section 31-40-3-2 clearly states that the fiscal body of the county shall appropriate money for use by the courts in providing GAL or CASA services, and that Indiana Code section 33-24-6-4 supports the proposition that the burden of financially supporting GAL and CASA programs lies with the county, we conclude that the trial court erred in ordering DCS to pay the fees associated with the services provided by the GALs in the instant matters. In addition, we recognize the distinct roles of each of our three branches of government and thus leave to the legislative branch the question of whether, in light of the trend toward State funding of child welfare costs, the costs associated with GALs and CASAs should be shifted to the State. Under our current statutory scheme, however, it is clear that the burden of paying *1183 for services rendered by GALs or CASAs should be attributed to and paid for by the county.
The judgment of the trial court is reversed, and this matter is remanded for further proceedings.
CRONE, J., and BROWN, J., concur.
NOTES
[1] The Appellees claim that DCS has waived its challenge to the trial court's order that DCS pay the GAL fees in the underlying CHINS proceedings because DCS allegedly failed to adequately articulate the specific reasons for its objections during the emergency detention hearings. We observe, however, that although DCS made a general objection to the trial court's order that it pay the GAL fees in JC-1, in JC-2, DCS, at the time the order was issued, made a very specific objection to the trial court's order that it pay the GAL fees. DCS objected, stating:

Your Honor, I would object to that under Indiana Code 31-41-2, specifically subsection D and it describes [that] the department is not responsible for payment of any costs or expenses for a child if the department if they've not been recommended or approved by the department and then specifically under subsection H one and two if that (inaudible) payment of these costs is not specified in this section which guardian ad litem fee is not, that the county in which the child in need of services is responsible for the payment and then again Your Honor on Indiana Code 31-43-2 that the fiscal body of the county shall appropriate money from a guardian ad litem fund to pay for guardian ad litem fees.
JC-2 Tr. pp. 11-12. In light of the specificity of DCS's objection in JC-2 and because JC-1 and JC-2 have been consolidated for the purpose of appeal, we conclude that DCS has not waived its challenge to the trial court's order on appeal. See generally, Grand Trunk Western RR. Co. v. Kapitan, 698 N.E.2d 363, 365 (Ind.Ct.App.1998) (providing that a party must make a "specific and timely" objection to the element at issue "at the first opportunity" to avoid waiver), trans. denied.
[2] However, we question the wisdom of DCS's cavalier suggestion, in light of the difficult economic circumstances facing many Indiana residents, that if a county does not have the necessary means to fund a GAL or CASA program, that the trial court should exercise its authority to issue a judicial mandate, pursuant to Indiana Trial Rule 60.5, in order to raise the necessary funds. We recognize the enormous pressures facing trial court judges in such matters at a time when Indiana counties are being forced to make substantial budget cuts, and we applaud Indiana's trial court judges for exercising great restraint in requesting funding for any non-essential or unnecessary expenditures.