911 N.E.2d 36 (2009)
In re the Termination of the Parental Relationship of J.G., a minor child, S.G., her mother, and J.G., her father,
Indiana Department of Child Services, Appellant-Petitioner,
v.
S.G., Appellee-Respondent.
No. 32A04-0902-JV-79.
Court of Appeals of Indiana.
August 7, 2009.
*37 Jon R. Rogers, Avon, IN, Robert J. Henke, Indianapolis, IN, Attorneys for Appellant.
Eric M. Oliver, Kendall Wood Lowry & Kessinger, Danville, IN, Attorney for Appellee.

OPINION
BAKER, Chief Judge.
Appellant-petitioner Indiana Department of Child Services (DCS) appeals the trial court's order directing DCS to pay the fees of the attorney who was appointed to represent appellee-respondent S.G. (Mother). DCS argues that the trial court erred by ordering DCS to pay the attorney fees of Mother's court appointed counsel. Finding that, notwithstanding a recent revision of the relevant statutes, the General Assembly did not intend for DCS to bear the burden of court appointed legal services in termination proceedings, and that the county should continue to be responsible for those costs, we reverse and remand for further proceedings.

FACTS
In 2007, J.G. (Child) was determined to be a child in need of services (CHINS). On November 21, 2008, DCS filed a petition to terminate the parent-child relationship of Mother, Child, and J.G. (Father), the child's biological father. At a January 22, 2009, initial hearing on the petition, the trial court appointed an attorney to represent Mother. At the same hearing, the trial court ordered DCS to pay the appointed attorney fees over DCS's objection. DCS now brings this interlocutory appeal.[1]

DISCUSSION AND DECISION

I. Standard of Review
DCS argues that it is not statutorily required to pay for the appointment of counsel to represent Mother during the termination proceeding and that we should review the issue de novo.[2] Mother contends that DCS is appealing a negative judgment and that a clearly erroneous standard applies. See In re J.C., 735 N.E.2d 848, 849 (Ind.Ct.App.2000) (applying a negative judgment standard of review in considering whether a county office of family and children is required to pay guardian ad litem fees in a CHINS proceeding).
*38 Although there are circumstances in which the negative judgment standard of review applies, this is not one of them. Here, the question raised by DCS  whether it or the county is obligated to pay for court appointed counsel representing a parent facing the termination of the parent-child relationship  is a pure question of statutory interpretation. Therefore, we will apply a de novo standard of review to this appeal. R.J.G. v. State, 902 N.E.2d 804, 805 (Ind.2009).

II. Historical Overview
Another panel of this court very recently considered a similar issue to the one we confront herein. In re N.S. & J.M., 908 N.E.2d 1176 (Ind. Ct.App. 2009). Specifically, the N.S. court concluded that Indiana Code sections 31-40-3-2 and 33-24-6-4 "indicate that fees associated with services provided by the [guardians ad litem] are to be paid by the county" and reversed the trial court's judgment to the contrary. 908 N.E.2d p. 1177. Although the issue we confront herein is distinct from that resolved by N.S., the underlying statutory scheme is the same, and the N.S. court included a thorough and helpful overview of the statutory scheme and recent changes thereto:
Historically, the decision as to what services to order in a CHINS proceeding was left solely to the discretion of the trial court. The trial court could consider recommendations by the local child welfare services office and representatives for the child in determining which services would be beneficial to the child. Any services ordered were paid for by the county fiscal body through the local child welfare services office. See Ind. Code § 12-19-7-1 (2007) (providing that all costs of services were required to be paid by a county). However, in 2008, the Indiana General Assembly enacted House Enrolled Act 1001 ("HEA 1001"), which in part sought to raise the level of the quality of services provided in CHINS, termination of parental rights ("TPR"), and delinquency cases by shifting the funding burden from local government to the State in exchange for more influence by DCS in recommending services. Pursuant to HEA 1001, effective January 1, 2009, DCS was granted the authority to recommend services and placements in all CHINS, TPR, and delinquency cases. Ind.Code §§ 31-34-4-7, 31-34-19-6.1 (2008). Under HEA 1001, if, in any particular case, the trial court disregards DCS's recommendations and orders services or placements other than those recommended by DCS, the county's fiscal body may become responsible for funding any and all services ordered by the trial court in that matter. Ind.Code §§ 31-34-4-7, 31-34-19-6.1....
Id. at p. 1178. The new statutory provisions, however, do not specifically state whether the burden of paying the fees associated with a court appointed attorney in termination proceedings shift to the State under HEA 1001.

III. Court Appointed Legal Services

A. Indiana Code § 34-10-1-2
DCS relies, in large part, on the statute governing court appointed counsel for indigent parties in civil proceedings. See Ind.Code § 34-10-1-2(f) (noting that the attorney fees shall be paid from the money appropriated to the court appointing the attorney or the court from which the action was transferred). Though  as explored more fully below  we find this statute to be a helpful analog, we do not believe it to be directly applicable herein. The appointment of counsel in a civil proceeding is a discretionary decision made by the trial court based upon a number of factors. I.C. § 34-10-1-2(b)-(d).
*39 In termination proceedings, on the other hand, the parents are entitled to be represented by counsel as a matter of right. Indiana Code section 31-32-2-5 provides that "[a] parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship." See also I.C. § 31-32-4-1 (explaining that "[t]he following persons are entitled to be represented by counsel: ... (2) A parent, in a proceeding to terminate the parent-child relationship, as provided by IC XX-XX-X-X...."); I.C. § 31-32-4-3(a) (providing that if a parent in a termination proceeding does not have an attorney who may represent the parent without a conflict of interest and the parent has not waived the right to counsel, "the juvenile court shall appoint counsel for the parent at the initial hearing or at any earlier time") (emphasis added). Finally, our Supreme Court has observed that "[r]ather than incur the time and money to litigate eligibility for public counsel in each case, Indiana has chosen to provide counsel in termination proceedings to all parents who are indigent." Baker v. Marion County Office of Family and Children, 810 N.E.2d 1035, 1038 (Ind.2004). Inasmuch as the decision to appoint counsel to represent an indigent parent in a termination proceeding is not discretionary, we do not find that the statute governing the discretionary appointment of counsel to indigent parties in civil proceedings is directly applicable herein.[3]

B. Indiana Code § 31-40-1-2
Indiana Code Section 31-32-4-4 states that "[p]ayment for counsel shall be made under IC 31-40." Before the passage of HEA 1001, Indiana Code section 31-40-1-2 provided that
(a) The county shall pay from the county family and children's fund the cost of:
(1) any services ordered by the juvenile court for any child or the child's parent, guardian, or custodian, other than secure detention; and
(2) returning a child under IC 31-37-23.
(b) The county fiscal body shall provide sufficient money to meet the court's requirements.
Now, however, the statute reads as follows:
(a) Except as otherwise provided in this section and subject to:
(1) this chapter; and
(2) any other provisions of IC 31-34, IC 31-37, or other applicable law relating to the particular program, activity, or service for which payment is made by or through the department;

*40 the department shall pay the cost of any child services provided by or through the department for any child or the child's parent, guardian, or custodian.

(b) The department shall pay the cost of returning a child under IC 31-37-23.
(c) Except as provided under section 2.5 of this chapter, the department is not responsible for payment of any costs of secure detention.
(d) The department is not responsible for payment of any costs or expenses for child services for a child if:
(1) the juvenile court has not entered the required findings and conclusions in accordance with IC XX-XX-X-X, IC XX-XX-XX-X, IC XX-XX-X-X, IC XX-XX-XX-X, or IC XX-XX-XX-X (whichever is applicable); and
(2) the department has determined that the child otherwise meets the eligibility requirements for assistance under Title IV-E of the federal Social Security Act (42 U.S.C. 670 et seq.).
(e) In all cases under this title, if the juvenile court orders services, programs, or placements that:
(1) are not eligible for federal assistance under either Title IV-B of the federal Social Security Act (42 U.S.C. 620 et seq.) or Title IV-E of the federal Social Security Act (42 U.S.C. 670 et seq.); and
(2) have not been recommended or approved by the department;
the department is not responsible for payment of the costs of those services, programs, or placements.
(f) The department is not responsible for payment of any costs or expenses for housing or services provided to or for the benefit of a child placed by a juvenile court in a home or facility located outside Indiana, if the placement does not comply with the conditions stated in IC XX-XX-XX-X(b) or IC XX-XX-XX-X(b).
(g) The department is not responsible for payment of any costs or expenses of child services for a delinquent child under a dispositional decree entered under IC 31-37-19, if the probation officer who prepared the predispositional report did not submit to the department the information relating to determination of eligibility of the child for assistance under Title IV-E of the Social Security Act (42 U.S.C. 670 et seq.), as required by IC XX-XX-XX-X(a)(3).
(h) If:
(1) the department is not responsible for payment of costs or expenses of services, programs, or placements ordered by a court for a child or the child's parent, guardian, or custodian, as provided in this section; and
(2) another source of payment for those costs or expenses is not specified in this section or other applicable law;
the county in which the child in need of services case or delinquency case was filed is responsible for payment of those costs and expenses.
(Emphasis added).
To determine whether DCS is required to pay for appointed counsel in termination proceedings, we must first consider whether court appointed counsel constitutes "services" within the meaning of the statute. Indiana Code section 31-40-1-1.5(c) defines the term "services" as follows:
As used in this chapter, "services" includes education, provision of necessary clothing and supplies, medical and dental care, counseling and remediation, or *41 any other services or programs included in a dispositional decree or case plan ordered or approved by the juvenile court for the benefit of a delinquent child under IC 31-37.
We cannot conclude that court appointed legal services are analogous to the "services" mentioned in the above definition. Those "services" include programs and types of assistance traditionally offered and overseen by DCS, and it is easy to see the logic in the General Assembly's decision to assign the cost of those services to DCS. Legal services, on the other hand, are not the types of services traditionally administered by DCS for children and parents. It is not evident, therefore, that the General Assembly intended that legal services be included in the above definition of "services."
The way in which the cost of court appointed attorneys is managed in other parts of the Indiana Code is instructive. In criminal proceedings, the county is responsible for appropriating the funds necessary to cover the cost of legal services for indigent defendants. Ind.Code § 33-40-8-4. Likewise, in civil proceedings, when an indigent party receives court appointed legal services, the county is responsible for covering the cost of those services. Ind.Code § 34-10-1-2(f). In a context more closely related to termination proceedings, Indiana Code section 31-40-3-2 instructs counties to plan for the cost of attorneys representing guardians ad litem and court appointed special advocates:
The fiscal body of the county shall appropriate money from:
(1) the guardian ad litem fund; or
(2) the court appointed special advocate fund;
to the juvenile courts of the county for use by the courts in providing guardian ad litem or court appointed special advocate services and the costs of representation for the guardians ad litem or court appointed special advocates.
See also In re N.S. & J.M., 908 N.E.2d p. 1180 (holding that "the trial court erred in ordering DCS to pay the fees associated with the services provided by the [guardians ad litem] in the instant matters"). Finally, the legislature has explicitly stated that "[t]he fees prescribed in civil actions or paternity actions may not be collected from the state or a political subdivision in an action brought by or on behalf of the state or the political subdivision." Ind. Code § 33-37-3-1(a).
It is evident, therefore, that as a general rule, the legislature prefers for the counties, rather than the State, to be responsible for the cost of legal services. Nothing contained within Indiana Code section 31-40-1-2 persuades us that the General Assembly intended to depart from that general rule in termination proceedings. Moreover, there is no line item or statute directing DCS to appropriate money for the purpose of covering the cost of legal services for parents involved in termination proceedings.
Under these circumstances, we cannot conclude that the legislature intended a radical overhaul of the way in which costs for legal services have always been allocated  and are allocated elsewhere in the Code  given that no explicit language to that effect has been included in the statute. As sagely observed by the N.S. court,
we recognize the distinct roles of each of our three branches of government and thus leave to the legislative branch the question of whether, in light of the trend toward State funding of child welfare costs, the costs associated with [guardians ad litem] and [court appointed special advocates] should be shifted to the State. Under our current statutory *42 scheme, however, it is clear that the burden of paying for services rendered by [guardians ad litem] or [court appointed special advocates] should be attributed to and paid for by the county.
908 N.E.2d p. 1182-83. Likewise, we find that the current statutory scheme places the burden of paying for court appointed legal services in termination proceedings with the county, rather than DCS. Therefore, we reverse the order of the trial court directing DCS to pay for Mother's attorney fees.
The judgment of the trial court is reversed and remanded for further proceedings.
MAY, J., concurs.
BARNES, J., dissents with opinion.
BARNES, Judge, dissenting with separate opinion.
I respectfully, but emphatically, dissent. As we recently recognized, "in 2008, the Indiana General Assembly enacted House Enrolled Act 1001 (`HEA 1001'), which in part sought to raise the level of the quality of services provided in CHINS, termination of parental rights (`TPR'), and delinquency cases by shifting the funding burden from local government to the State in exchange for more influence by DCS in recommending services." In re N.S., 908 N.E.2d 1176, 1178 (Ind. Ct.App., 2009) (referring to P.L. 146-2008); see also In re I.C., J.C., No. 32A01-0902-JV-97, 910 N.E.2d 273 (Ind.Ct.App. July 22, 2009). The majority believes that counties should bear the costs when counsel is appointed by the trial court to represent parents in termination proceedings. I, however, believe the paradigm in these sorts of cases has shifted dramatically with the enactment of HEA 1001. If we, as a State and a society, truly believe in the best interests of children and that the proper and appropriate care for them is a priority, we must then, in my opinion, assure that before they are taken from their families, these statutes are strictly followed and the DCS is put to its proof.
Focusing on Indiana Code Section 31-40-1-2,[4] it is my opinion that the appointment of counsel to represent a parent in a termination proceeding should be considered "child services" for "the child's parent..." Ind.Code § 31-40-1-2(a). I believe the majority's reliance on the definition of "services" in Indiana Code Section 31-40-1-1.5(c) is misplaced. This definition includes specific items, ranging from clothing to dental care, that are to be included as services "for the benefit of a delinquent child under IC 31-37." This definition is neither an exclusive list of what constitutes child services nor does it appear to apply to termination proceedings. Moreover, the DCS does not rely on this definition in its briefs. For these reasons, I conclude Indiana Code Section 31-40-1-1.5(c) is inapposite to the question before us today.[5]
In determining whether the appointment of counsel should be considered child services, I cannot overlook the long-standing public policy that "children are likely raised best by their parents. Parental termination is a last resort." Baker v. Marion County Office of Family and Children, 810 N.E.2d 1035, 1041 (Ind.2004). "A parent's interest in the care, custody, *43 and control of his or her children is `perhaps the oldest of the fundamental liberty interests.'" Bester v. Lake County Office of Family and Children, 839 N.E.2d 143, 147 (Ind.2005) (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)). The parent-child relationship is one of the most valued relationships in our culture. Id.
By ensuring the parent-child relationship is terminated in a procedurally fair setting, which includes the representation of a parent by counsel, the DCS promotes confidence and finality in the outcome of the proceeding for both parents and children. See Graves v. State, 823 N.E.2d 1193, 1196 n. 4 (Ind.2005) ("Not wishing to inflict the vagaries of ongoing re-litigation on children, we recently adopted [a standard that] focuses not on whether the lawyer might have done this or that, but whether `the parents received a fundamentally fair trial whose facts demonstrate an accurate determination.'" (quoting Baker, 810 N.E.2d at 1041)); see also I.C. § 31-10-2-1(10) (defining the policy of Indiana and the purpose of Title 31 to provide a judicial procedure that ensures fair hearings, recognizes and enforces the legal rights of children and their parents, and recognizes and enforces the accountability of children and their parents). Because I believe that providing counsel for parents advances the best interests of children, I reject the DCS's assertion that paying for appointed counsel will "severely hinder" its goal of protecting children. Appellant's Br. p. 16 (capitalization altered).
In addition to serving the best interests of children, the DCS protects its own interests by providing counsel to parents. In discussing a state's interests in providing counsel in a termination proceeding, the Supreme Court has observed:
Since the State has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision. For this reason, the State may share the indigent parent's interest in the availability of appointed counsel. If, as our adversary system presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented by counsel, without whom the contest of interests may become unwholesomely unequal....
Lassiter v. Department of Soc. Servs. of Durham County, N. C., 452 U.S. 18, 27-28, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981).
Let there be no mistaking my intent here-some parents do not deserve to have children in their care, custody, and control because they have grievously abused and/or neglected them. I simply believe that before this most basic and precious right, parenthood, is terminated, every service be made available to the parents in order to ensure their constitutionally mandated prerogatives. Thus, for purposes of Indiana Code Section 31-40-1-2(a), I consider the appointment of counsel to be child services provided through the DCS for the child's parent. Accordingly, in my view, the DCS must pay the cost of that service unless an exception applies. See I.C. § 31-40-1-2(a).
The DCS makes several arguments regarding various exceptions. I believe, however, that the DCS is trying to fit square pegs into round holes. For example, I do not believe that the appointment of counsel is a discretionary service under Indiana Code Section 31-40-1-2(e), that Indiana Code Section 33-37-3-1(a) pertains to anything other than the assessment *44 of a filing fee by a trial court, that Indiana Code Section 31-31-1-1 requires counties to appropriate money for attorneys to represent parents in termination proceedings as part of the operation of the juvenile court, or that the "American Rule" applies to the statutory right to appointment of counsel in termination proceedings.
As for certain contract obligations for legal services to the poor in criminal proceedings and guardians as litem ("GAL") and court appointed special advocates ("CASA") in juvenile proceedings, there is specific statutory authority requiring the counties to appropriate money for these services. See e.g., I.C. § 33-40-8-4, 31-40-3-2. Under this statutory authority I have no qualms with the decision in In re N.S. Neither the majority nor the DCS, however, point to any such similar county-appropriation provision for counsel appointed to represent parents in termination proceedings. Further, I am not convinced that all public defender programs or GAL or CASA programs are exclusively county-funded programs, as the DCS appears to argue is required here. For example, pursuant to Indiana Code Chapter 33-40-6, qualifying counties have the opportunity to seek reimbursement through the Public Defense Fund for a portion of the cost of providing legal representation for indigent defendants. See Kling v. State, 837 N.E.2d 502, 506 n. 5 (Ind.2005). Further, under Indiana Code Chapter 33-40-1, the State Public Defender provides representation to incarcerated defendants in certain circumstances. Also, counties that are required to implement GAL and CASA programs for children who are alleged to be children in need of services shall receive matching funds from State. See P.L. 234-2007 § 3, P.L. 182-2009 § 3.[6]
Finally, contrary to the DCS's argument, Indiana Code Section 31-40-1-2(h) only requires counties to pay costs when the DCS is not responsible for such payments and no other source of payment is specified. Because I consider the appointment of counsel in termination proceedings to be child services, the DCS is responsible for payment and, therefore, Indiana Code Section 31-40-1-2(h) does not apply here.
The DCS, not the county, determines when to initiate a termination proceeding. The DCS authors treatment plans, exacts requirements from parents as to basic skills, and provides all sorts of psychological and educational resources for parents. Because the DCS decides when to seek a termination, it should bear the cost of defending that decision. To heap the cost of these actions on the coffers of already cash-strapped counties is, in my mind, courting a legal and practical disaster.[7] *45 Thus, I conclude that Indiana Code Section 31-40-1-2 requires the DCS, not counties, to pay for the appointment of counsel in a termination proceeding.
NOTES
[1] Indiana Appellate Rule 14(A)(1) specifies that a party is entitled as a matter of right to appeal an interlocutory order for the payment of money.
[2] Mother argues that this issue is waived because DCS did not make a specific objection when the trial court ordered it to pay the attorney fees. At the hearing, however, DCS objected based on "Trial Rule 60[.]5 mandate of funds as well as Indiana Code 31[-]41[-]2 which discusses [ ] cost of services that the department is [ ] obligated to pay under Indiana Code 31[-]41[-]2 as well as Trial Rule 60[.]5 mandated funds." Tr. p. 32. Although the objection could have been more elaborate, it was sufficient to preserve the issue for appeal.
[3] Because we have concluded that Indiana Code Chapter 34-10-1 is not applicable to termination proceedings, we reject DCS's assertion that the trial court should use an Indiana Trial Rule 60.5 mandate process to appropriate funds to pay counsel. See Sholes v. Sholes, 760 N.E.2d 156, 166 (Ind.2001) (observing that when deciding to appoint counsel pursuant to Indiana Code Section 34-10-1-2 "the trial court is obliged to consider whether any specific fiscal or other governmental interests would be severely and adversely affected by a Trial Rule 60.5 order requiring payment of any appointed counsel."). Nothing in Indiana Code Article 31-40 refers to the mandate process of Indiana Trial Rule 60.5. Further, DCS recognizes that county family and children funds no longer exist because one state-funded family and children fund has been created to finance the programs and services that were once supported by local property tax revenues. See Appellant's Reply Br. p. 2. Moreover, DCS offers no suggestion as to how, in the absence of the local property tax revenues, the County would fund the proposed Indiana Trial Rule 60.5 mandates.
[4] I agree with the majority that counsel must be appointed in a termination proceeding. See Ind.Code §§ 31-32-2-5, 31-32-4-1; XX-XX-X-X(a); see also Baker v. Marion County Office of Family and Children, 810 N.E.2d 1035, 1038 (Ind.2004). I also agree with the majority that Indiana Code Chapter 34-10-1 does not apply to termination proceedings.
[5] Similarly, I believe that Indiana Code Section 31-9-2-17.8 defining "child services" does not provide guidance in this case.
[6] This appropriation provides:

The division of state court administration shall use the foregoing appropriation to administer an office of guardian ad litem and court appointed special advocate services and to provide matching funds to counties that are required to implement, in courts with juvenile jurisdiction, a guardian ad litem and court appointed special advocate program for children who are alleged to be victims of child abuse or neglect under IC 31-33 and to administer the program. A county may use these matching funds to supplement amounts collected as fees under IC 31-40-3 to be used for the operation of guardian ad litem and court appointed special advocate programs. The county fiscal body shall appropriate adequate funds for the county to be eligible for these matching funds.
P.L. 182-2009 § 3.
[7] The DCS's suggestion that counties should use Indiana Trial Rule 60.5 to mandate the monies to pay for appointed counsel is, in my opinion, both disingenuous and cynical. Like the pea under the shell, it seems to me that the DCS keeps moving the financial target. First, the Family and Children's Funds were dissolved and then, according to the DCS, counties must absorb the costs for which no money is allocated. See I.C §§ 12-19-7-1 to -4 (2008), repealed by P.L. 146-2008 § 805. I agree with the majority that Indiana Trial Rule 60.5 is not available for the payment of appointed counsel in a termination proceeding.