913 N.E.2d 784 (2009)
In re the Matter of M.W., A Child Alleged to be a Delinquent Child
Indiana Department of Child Services, Appellant,
v.
Hendricks County, Appellee.
No. 32A01-0905-JV-259.
Court of Appeals of Indiana.
September 28, 2009.
*785 Robert J. Henke, DCS Central Administration, Indianapolis, IN, Attorney for Appellant.
Paula M. Sauer, Danville, IN, Attorney for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant, the Indiana Department of Child Services (DCS), appeals the trial court's Order mandating the DCS to pay the costs of the minor child's, M.W., secure detention and weekly child support while M.W. is incarcerated at the Department of Correction.
We reverse.

ISSUES
The DCS raises two issues on appeal, which we restate as follows:
(1)Whether the trial court erred in requiring the DCS to pay the costs of secure detention for a minor child; and
(2) Whether the trial court erred in finding that the DCS acted in loco parentis and thus was required to pay weekly child support for the minor child.

FACTS AND PROCEDURAL HISTORY
On April 4, 2009, M.W., 15 years old, was arrested and charged with possession of a stolen vehicle, a Class D felony if committed by an adult, Ind.Code § 35-43-4-2, and operating a vehicle never licensed, a Class C misdemeanor if committed by an adult, I.C. § 9-24-18-1. At the time, M.W. was living with foster parents as her biological parents' parental rights had been terminated approximately five years earlier.
On April 6, 2009, M.W. appeared at the trial court for an initial hearing together with her DCS family case manager, Kyla Rogers (Rogers), and her foster mother. During the initial hearing, Rogers admitted to being responsible for M.W. and recommended the following course of action:
At this time I would like for her to be detained because we are not in a position to place her back in the foster home at this time. [W]e will staff the case [] today with our division manager, my supervisor and I, for an appropriate facility for her. I think the Department of *786 Correction should be looked at as an option because of great deal of past behavior on [M.W.'s] part but if that is not an option to look at the Department of Correction then we will immediately look for a locked facility for her which we feel is necessary at this time.
(Transcript p. 10). As a result, the trial court stated:
At your request right now she's ordered committed to the Muncie Diagnostic and Reception Center pending staffing by you or whatever other information that you can give in this case with costs to be paid by the Marion County Department of Child Services at the request of [Rogers] pending a staffing.
(Tr. p. 11). Rogers confirmed that this is "the way [she] want[ed] this case handled right now." (Tr. p. 11). The trial court's Order to Transport and Order on Initial hearing, issued after the initial hearing on April 6, 2009, includes the handwritten annotation "Marion Co. DCS to pay all costs." (Appellee's App. p. 2).
On April 13, 2009, M.W. again appeared before the trial court and admitted to the charges. In its Order, the trial court found, in pertinent part,
[T]he [c]ourt now awards wardship of the child to the Indiana Department of Correction for housing in any correctional facility for children or any community-based correctional facility for children. The [c]ourt's dispositional order is entered for the following reasons: [t]he [c]hild is a ward of DCS and had been uncontrollable in foster settings.
. . .
Costs in the amount of $1452.00 are hereby assessed against [M.W.]. In addition, the parents[,] Department of Child Services[,] are hereby ordered to reimburse Hendricks County for all costs of detention and to pay the State of Indiana-Indiana Department of Correction, weekly guideline child support.
(Appellant's App. pp. 1-2).
The DCS now appeals.[1] Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Costs for Secure Detention

First, the DCS contends that pursuant to I.C. § 31-40-1-2(c), the trial court cannot mandate the DCS to pay the costs of the secured detention of a minor child alleged to be delinquent unless there is an agreement satisfying the requirements stipulated in I.C. § 31-40-1-2.5. The DCS maintains that as no agreement exists to burden it with these costs, Hendricks County remains responsible for their payment.
The question raised by the DCS is a pure question of statutory interpretation and, as such, a de novo standard of review applies. See In re N.S. & J.M., 908 N.E.2d 1176, 1180 (Ind.Ct.App.2009). A de novo review allows us to decide an issue without affording any deference to the trial court's decision. Id. The cardinal rule of statutory construction is that if a statute *787 is unambiguous, we need not and cannot interpret it; rather, we must apply its plain and clear meaning. Id.
Recently, in 2008, the Indiana General Assembly enacted House Enrolled Act 1001 (HEA 1001), which in part sought to raise the level of the quality of services provided in CHINS, termination of parental rights, and delinquency cases by shifting the funding burden from local government to the State in exchange for more influence by DCS in recommending services. Pursuant to HEA 1001, effective January 1, 2009, DCS was granted the authority to recommend services and placements in all CHINS, termination of parental rights, and delinquency cases. See I.C. §§ 31-34-4-7; XX-XX-XX-X.1 (2008). Under HEA 1001, if, in any particular case, the trial court disregards DCS's recommendations and orders services or placements other than those recommended by DCS, the county's fiscal body may become responsible for funding any and all services ordered by the trial court in that matter. See I.C. §§ 31-34-4-7; XX-XX-XX-X.1.
With respect to the payment of costs for the secure detention of a minor delinquent child, the new statutory provisions state in I.C. § 31-40-1-2
Obligation of parent, guardian, or department for cost of services or return of child; costs of secure detention or child services
. . .
(c) Except as provided under section 2.5 if this chapter, the department is not responsible for payment of any costs of secure detention.
Section 2.5 specifies that
(b) The department may, by agreement with the probation office of the juvenile court in which the delinquency case is pending, pay the costs of specified services for a child ... during the time the child is placed in a secure detention facility.
(c) An agreement under this section must specify:
(1) the particular services that will be paid by the department during the time the child is placed in a secure detention facility;
(2) the term of the agreement;
(3) any procedure or limitations relating to amendment or extension of the agreement; and
(4) any other provision that the parties consider necessary or appropriate.
. . .
(e) An agreement under this section:
(1) shall be signed by:
(A) the director of the department; and
(B) the judge of the juvenile court that ordered or approved placement of the child in the secure detention facility; and
(2) may not be considered to be a contract for purposes of I.C. 4-13-2.
I.C. § 31-40-1-2.5.
Based on these unambiguous statutory provisions, the DCS is not responsible to carry the costs of the minor child's secure detention unless there is a written agreement. Here, no such written agreement ever existed and therefore, the DCS cannot be held liable to pay M.W.'s costs of secure detention to Hendricks County.
Nevertheless, Hendricks County now attempts to circumvent the statute by claiming that Rogers invited the error during the initial hearing on April 6, 2009, when she agreed to the trial court's inquiry as to whether Rogers wanted M.W. placed at the Department of Correction. We are not persuaded.
*788 The record reveals the following colloquy:
[ROGERS]: At this time I would like for her to be detained because we are not in a position to place her back in the foster home at this time. [W]e will staff the case [] today with our division manager, my supervisor and I, for an appropriate facility for her. I think the Department of Correction should be looked at as an option because of great deal of past behavior on [M.W.'s] part but if that is not an option to look at the Department of Correction then we will immediately look for a locked facility for her which we feel is necessary at this time.
[TRIAL COURT]: So you, so you're requesting temporarily until you staff this or whatever you call that?
[ROGERS]: Right.
[TRIAL COURT]: That, that she be placed?
[ROGERS]: Right.
(Tr. pp. 10-11). Consequently, the trial court stated:
At your request right now she's ordered committed to the Muncie Diagnostic and Reception Center pending staffing by you or whatever other information that you can give in this case with costs to be paid by the Marion County Department of Child Services at the request of [Rogers] pending a staffing.
(Tr. p. 11). Rogers confirmed that, "pending a staffing," this is "the way [she] want[ed] this case handled right now." (Tr. p. 11).
This exchange between Rogers and the trial court demonstrates that Rogers believed that M.W. should be placed at the correctional facility until she could find a more appropriate secure placement for the minor. The record fails to establish that Rogers clearly intended the DCS to shoulder the costs for the secure placement.
Furthermore, at an earlier exchange between the trial court and the Hendricks County director of probation, the director clearly informed the trial court that
I guess it would depend on if she is released whether DCS is intending to place her. It's my understanding through law that they cannot pay for secure detention, DCS cannot on their wards so, I would agree to release her if, if it's going to be something where they can monitor her.
(Tr. pp. 9-10). Therefore, we are not convinced that Rogers invited the error, especially after the trial court was put on notice by the Hendricks County director of probation that the DCS could not be held responsible for the costs. As we find that the DCS cannot be mandated to pay the costs of the minor child's secure detention, we reverse the trial court's finding.

II. Weekly Child Support

Next, the DCS contends that the trial court erred by finding that the agency acted in loco parentis and ordered it to pay child support for M.W. to the Department of Correction. In loco parentis means "in the place of a parent." BLACK'S LAW DICTIONARY 803 (8th ed.2004). The doctrine generally "refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties." Niewiadomski v. United States, 159 F.2d 683, 686 (6th Cir. 1947). This status results from intention and generally may be terminated at any time. Id.; see also R.D.S. v. S.L.S., 402 N.E.2d 30, 33 (Ind.Ct.App.1980).
*789 In In re the Marriage of Snow v. England, 862 N.E.2d 664, 667 (Ind.2007), our supreme court noted a number of public policies that militate against imposing a child support obligation on stand-in parents, such as custodians and guardians. The court elaborated that
Indiana policy disfavors entering a support order against adults who are not natural parents.... Second, it makes little sense to require child support from a person in loco parentis when that status is temporary in nature and essentially voluntary. The stand-in parent would effectively be able to choose whether or not he or she should be required to pay child support simply by choosing to continue or discontinue the relationship. It also seems unwise to create a layer of financial risk for adults who voluntarily provide financial and emotional support to children not their own. Lastly, it is difficult to imagine imposing parallel obligations on the institutions (like juvenile courts or universities) to which in loco parentis is commonly deployed.
Id. (internal quotations omitted). As a result, the supreme court held that "when a relationship of in loco parentis exists, that status alone is an insufficient basis for imposing a child support obligation on the stand-in parent." Id.
While Rogers admitted during the initial hearing that M.W.'s biological parents' parental rights had been terminated and the DCS was responsible for M.W., that fact alone is an insufficient basis for imposing a child support obligation. Moreover, as our supreme court emphasized in Snow, it would be difficult to envision burdening the DCS, as an institution, with a "parallel obligation" of child support. Id. As such, we reverse the trial court's finding requiring the DCS to pay child support.

CONCLUSION
Based on the foregoing, we conclude that (1) the trial court erred in mandating the DCS to pay the costs of secure detention for a minor child; and (2) the trial court erred in finding that the DCS was required to pay weekly child support for the minor child.
Reversed.
BAKER, C.J., and FRIEDLANDER, J., concur.
NOTES
[1] As an initial issue, Hendricks County asserts that the DCS failed to timely file a notice of appeal. In essence, Hendricks County contends that the DCS should have appealed the trial court's April 6, 2006 Initial Order in which it inserted a handwritten annotation that the Marion County DCS was responsible for all costs. However, any claim of error in an interlocutory order, even an interlocutory order which is appealable as of right, is not waived for failure to take an interlocutory appeal but instead may be raised on appeal from the final judgment. Bojrab v. Bojrab, 810 N.E.2d 1008, 1014 (Ind.2004). As such, we find that the DCS timely filed its notice of appeal and preserved the error for our review.