# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2018, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination
on the Parent-Child Relationship
of A.A.D. and A.C.D.;

E.B. (Mother)

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner.*

January 31, 2018

Court of Appeals Case No.
79A05-1708-JT-1949

Appeal from the Tippecanoe
Superior Court

The Honorable Faith A. Graham,
Judge

Trial Court Cause Nos.
79D03-1610-JT-103
79D03-1610-JT-104

**Pyle, Judge.**

# Statement of the Case

[1] E.B. ("Mother") appeals the termination of the parental relationship with her children, A.A.D. ("A.A.D.") and A.C.D. ("A.C.D.").[1] The gravamen of her argument is that reversible error occurred when the trial court failed to ensure the appointment of a court-appointed special advocate ("CASA") to represent the interests of her children in the termination hearing as required by INDIANA CODE § 31-35-2-7. Because Mother is correct, we reverse and remand with instructions for the trial court to ensure the appointment of a CASA.

[2] We reverse and remand with instructions.

# Issue

> The dispositive issue is whether reversible error occurred when the trial court failed to ensure the appointment of a CASA to represent the interests of Mother's two children.

# Facts

[3] Mother and Father are the parents of A.A.D., who was born in March 2009, and A.C.D., who was born in August 2015. When A.C.D. was born, his meconium tested positive for marijuana. He was also suffering withdrawal symptoms from Suboxone, which Mother had taken while she was pregnant. The Department of Child Services ("DCS") removed six-year-old A.A.D. and

---

[1] The trial court also terminated A.D.'s ("Father") parental relationship with A.A.D. and A.C.D. Father is not a party to this appeal.

A.C.D. from their parents, and both children were adjudicated to be Children in Need of Services ("CHINS"). In October 2015, the trial court ordered Mother to participate in substance abuse treatment, home-based case management services, and individual therapy. Mother was also ordered to remain drug and alcohol free and to maintain stable housing and employment to meet the needs of her family.

[4] When Mother failed to follow the court-ordered parent participation plan and was subsequently charged with Level 6 felony theft, DCS filed a petition to terminate her parental rights in October 2016. The Chronological Case Summary ("CCS") reveals that in November 2016, the trial court held an initial hearing wherein Mother denied the allegations in the termination petition. The specific CCS entry for that hearing states as follows: "Court appoints the CASA Program in this cause to represent and protect the best interests of the child(ren). CASA Director shall immediately assign a specific CASA." (App. 4, 9). The order on the initial hearing also states as follows: "Court appoints the CASA Program in this cause to represent and protect the best interests of the child(ren). CASA director shall immediately assign a specific CASA." (App. 21). However, no CASA was ever appointed.

[5] The trial court held the first day's hearing on the termination petition in January 2017. At that time, both Mother and Father had executed documents consenting to paternal grandfather's ("Paternal Grandfather") adoption of the children. However, the trial court explained to the parents that it had "not even approved [Paternal Grandfather] for placement [and that it] could approve that

or could not approve that." (Tr. 7). Also at the hearing, the trial court noted that, "[n]o CASA is assigned to this." (Tr. 12). DCS Caseworker Karen Travis testified that the children had been placed in non-relative foster care since October 2015.

[6] The second day's hearing on the termination petition was held in April 2017. DCS Caseworker Kelly Brewer ("Caseworker Brewer") testified that Mother, who had been convicted and sentenced to ten years for robbery, had also been "unsuccessfully discharged from services with multiple providers." (Tr. 30). Caseworker Brewer, who further testified that Mother had failed to maintain stable employment and housing, recommended terminating Mother's parental rights. After DCS had finished questioning Caseworker Brewer, the trial court stated as follows: "CASA any partic – oh we don't have a CASA assigned to this case. I am sorry. [Mother's Counsel], any particular questions?" (Tr. 41).

[7] Mother testified that she wanted Paternal Grandfather to adopt the children so that she had the "chance to be in [her] kids' lives when [she got] out of prison." (Tr. 51). She explained that she did not "want to lose [her children] forever and if it [meant] that [she got her] rights terminated[,] [she] just want[ed her] children] to be with family." (Tr. 53). Father testified that he worked ten to twelve hour shifts five to six days a week and that he was not in a position to be the primary caretaker of his children. He also testified that he wanted Paternal Grandfather to adopt the children. No additional witnesses testified.

[8]    In July 2017, the trial court issued an order involuntarily terminating Mother's parental rights. The order provides, in relevant part, as follows:

> DCS has a satisfactory plan of adoption for the care and treatment of the children following termination of parental rights. The children can be adopted and there is reason to believe an appropriate permanent home has or can be found for the children ***with a relative.

(App. 39) (asterisks in original). Mother now appeals.

## Statement of the Case

[9]    Mother argues that the trial court committed reversible error when it failed to ensure the appointment of a CASA as required by statute. We agree. The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. A parent's interest in the care, custody, and control of her children is "'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Cnty. Office of Family & Children,* 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Because termination proceedings implicate the fundamental relationship between parent and child, the legislature has provided a detailed list of procedural requirements for courts to follow in such proceedings. *Matter of S.L.*, 599 N.E.2d 227, 229 (Ind. Ct. App. 1992).

[10]    For example, INDIANA CODE § 31-35-2-7 provides that where, as here, a parent objects to the termination of the parent-child relationship, "the court *shall*

appoint: (1) a guardian ad litem [("GAL")]; (2) a court appointed special advocate; or (3) both . . . for the child." (emphasis added). Because neither party challenges the trial court's failure to appoint a GAL, we focus our discussion on the trial court's failure to ensure the appointment a CASA.

[11] A CASA is a community volunteer who has been appointed by the trial court to represent and protect the best interests of a child with services requested by the court, including researching, examining, advocating, facilitating, and monitoring the child's situation. IND. CODE § 31-9-2-28(b). This court has previously explained that a CASA is an "integral participant[] in looking after the best interest of children who are subjected to our court system."[2] *In re N.S.*, 908 N.E.2d 1176, 1179 (Ind. Ct. App. 2009). The statutory right to have a CASA to represent their best interests belong to the children, not the parent. *S.L.* 599 N.E.2d at 229. Further, neither the parent nor the State can waive the

---

[2] We specifically explained in detail as follows:

> The State at first glance is seemingly acting to promote or protect the interest of the children. However, it also has an interest in bringing to an end the financial burden it is bearing while the child is in [DCS's] custody. By terminating the parental rights, rather than continuing with the CHINS procedures, the State pursues the route leading to the adoption of the child and a conclusion to the State's financial burden for the children. Therefore, the interests of [DCS] and the interests of the child are not necessarily identical. The legislature recognizing this reality enacted several statutes which direct or permit the court to appoint a representative for the children involved in such proceedings.

*S.L.*, 599 N.E.2d at 230 n.3.

children's statutory right, and the failure to appoint a CASA in such cases is not harmless error. *Id.* at 229, 230.

[12] Here, the trial court initially complied with the statute when it ordered the appointment of a CASA. However, at both days of the termination hearing, the trial court acknowledged that no CASA had been appointed.[3] At the time of the hearing, the children were nine and two years old. Because of the trial court's failure to ensure the appointment of a CASA, no one represented the interests of these young children. *See id.* As a result, reversible error occurred. *See id. See also Jolley v. Posey Cnty. Dep't of Pub. Welfare*, 624 N.E.2d 23, 23 (Ind. Ct. App. 1993) (reversing and remanding when the trial court failed to appoint a GAL in parental termination proceedings).

[13] Reversed and remanded with instructions.

Kirsch, J., concurs.

Bailey, J., concurs with separate opinion.

---

[3] The transcript reveals that "a representative from the CASA Office" attended the first day's hearing in January 2017. (Tr. at 4). However, the representative did not testify or make recommendations, and despite the representative's presence, the trial court specifically stated that no CASA had been assigned to represent the children's interests. It appears that no representative attended the April 2017 hearing. Additionally, the CCS does not show that a specific CASA had been assigned or appointed.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination on the Parent-Child Relationship of A.A.D. and A.C.D.; | Court of Appeals Case No. 79A05-1708-JT-1949 |
| E.B. (Mother), | |
| *Appellant-Respondent,* | |
| v. | |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Bailey, Judge, concurring with separate opinion.**

I agree with my colleagues that, where a parent objects to the termination of the parent-child relationship, Indiana Code Section 31-35-2-7 requires that the court appoint a guardian ad litem ("GAL") to represent the child. I write separately to clarify that E.B. ("Mother") did object to the termination of her parental rights, in that she did not consent to the termination pursuant to Indiana Code Section 31-35-1-6.

"The voluntary termination of the parent-child relationship is controlled by statute." *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 282 (Ind. 2003). In order for the court to accept a parent's voluntary consent to the termination of her parental rights:

> the parents must give their consent in open court unless the court makes findings of fact upon the record that:
>
> (1) the parents gave their consent in writing before a person authorized by law to take acknowledgments; and
>
> (2) the parents were:
>
> (A) advised in accordance with section 12[4] of this chapter; and
>
> (B) advised that if they choose to appear in open court, the only issue before the court is whether their consent was voluntary.

Ind. Code § 31-35-1-6(a).

Here, Mother did not give her consent to termination of her parental rights in writing,[5] nor was there evidence that she was advised of her rights in accordance with Indiana Code Section 31-35-1-6(a)(2). Therefore, in order for her parental rights to be voluntarily terminated, Mother must have consented in open court

---

[1] Section 12 lists the advisements that parents must be given, including advisement that their consent is permanent and cannot be revoked unless obtained by fraud or duress. I.C. § 31-35-1-12.

[2] Mother's written consent for her children's paternal grandfather to adopt them was not admitted into evidence and, in any case, was not a written consent to terminate her parental rights.

to the termination. I.C. § 31-35-1-6(a). However, Mother's testimony regarding her wishes were ambiguous. She did consent in open court to the paternal grandfather adopting her children so that the children could "be with family," and she could "have a relationship with them" when she was released from prison. Tr. at 51-52. Yet, regarding the termination of her parental rights, Mother stated, "I just don't want to lose [the children] forever and if it means that I get my rights terminated I just want them to be with family. That is all I want." *Id.* at 52-53. That is hardly a clear statement that she consented to the termination of her parental rights. Rather, taken as a whole, Mother's testimony shows her intent that her rights to the children be terminated only if they are adopted by family, such as the paternal grandfather. That was her intent despite the trial court's advisement that it would not necessarily agree to place the children with the paternal grandfather.

It is beyond dispute that "the parent-child relationship is one of the most valued relationships in our culture." *Neal*, 796 N.E.2d at 285 (quotation and citation omitted). Given parents' fundamental liberty interest in the parent-child relationship, "the certainty of a trial court's decision to terminate a parent's parental rights to his or her child is paramount." *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). When the parent's testimony regarding consent to termination of parental rights is ambiguous, I believe we should err on the side of protecting the parent-child relationship. Because Mother did not clearly consent in open court to the termination of her parental rights and the trial court did not make the findings of fact otherwise required by Indiana Code

Section 31-35-1-6, I agree with my colleagues that Mother "object[ed]" to the termination of her rights for purposes of Indiana Code Section 31-35-2-7, thus requiring the appointment of a GAL.