KATHERINE WILLIS MOYER, Plaintiff-Appellee v. MATTHEW BENNETT MOYER, Defendant-Appellant

No. COA95-887

(Filed 18 June 1996)

**Parent and Child § 29 (NCI4th)— support of stepchild—written agreement not executed according to statute—support not required**

The trial court erred in ordering defendant stepfather to provide child support payments and other benefits for his stepchild based on a voluntary written agreement signed by both spouses, since the written agreement was not executed with the formalities required by law in that it had no acknowledgement and contained an ambiguous agreement to support the child only "until more permanent arrangements were decided upon." N.C.G.S. §§ 50-13.4(b) and 52-10.1.

**Am Jur 2d, Parent and Child §§ 41 et seq.**

**Stepparent's postdivorce duty to support stepchild. 44 ALR4th 520.**

Appeal by defendant from order entered 23 May 1995 by Judge Christopher Bean in Pasquotank County, District Court. Heard in the Court of Appeals 4 June 1996.

*No brief filed for plaintiff appellee.*

*Twiford, Morrison, O'Neal & Vincent, L.L.P., by Edward A. O'Neal, for defendant appellant.*

SMITH, Judge.

The central issue in this case is whether the trial court properly ordered defendant stepfather to provide child support payments and other benefits such as dental insurance, health insurance, and housing for his stepchild based on a voluntary written agreement signed by both spouses. Since the written agreement was not executed with the formalities required by law, we reverse.

Plaintiff and defendant married on 24 October 1987 in Carteret County. The parties eventually moved to Elizabeth City, North Carolina and purchased a home, titled jointly, with funds from defendant's inheritance.

MOYER v. MOYER

[122 N.C. App. 723 (1996)]

The couple had a son, Christopher Matthew Moyer, who was born in 1990. In addition, plaintiff had a daughter, Kandace Joy Leann Willis Moyer, born in 1985, from a prior relationship. The information provided for Kandace's birth certificate was supplied without defendant's knowledge and falsely stated that defendant was Kandace's biological father.

During the marriage and after separation, defendant provided support for both his biological child and his wife's child from her prior relationship. The parties separated 12 May 1994.

The parties signed a handwritten agreement dated 19 May 1994, after their separation, in which defendant agreed to pay child support for both children in a total of $400.00 per month. The agreement was not acknowledged and the terms agreed upon were effective only "until more permanent arrangements were decided upon." The court received no evidence concerning the biological father's ability to meet Kandace's financial needs and no effort had been made to locate him.

The district court heard the case on plaintiff's request for alimony pendente lite, child custody, support for both minor children, attorney's fees, and writ of possession for the former marital residence. The court, *inter alia*, awarded plaintiff custody of the children and pursuant to the written agreement of 19 May 1994 and the trial court's conclusion that defendant was *in loco parentis* to Kandace during the marriage, ordered defendant to pay child support for both children in an order dated 23 May 1995. Defendant timely appealed those portions of the order relating to support of Kandace.

At common law, the relationship between stepparent and stepchild does not of itself confer any rights or impose any duties upon either party. *State v. Ray*, 195 N.C. 628, 629, 143 S.E. 216 (1928). In contrast, if a stepfather voluntarily takes the child into his home or under his care in such a manner that he places himself *in loco parentis* to the child, he assumes a parental obligation to support the child which continues as long as the relationship lasts. *In re Dunston*, 18 N.C. App. 647, 649, 197 S.E.2d 560, 562 (1973). This Court has defined a person *in loco parentis* as " 'one who has assumed the status and obligations of a parent without formal adoption.' " *Shook v. Peavy*, 23 N.C. App. 230, 232, 208 S.E.2d 433, 435 (1974) (quoting 67A C.J.S. *Parent and Child* § 153, p. 548 (1978)). However, the fact that a stepfather is *in loco parentis* to a minor child during marriage to the child's mother does not create a legal duty to continue support of the

child after the marriage has been terminated either by death or divorce. *Newman v. Newman*, 64 N.C. App. 125, 129, 306 S.E.2d 540, 543 (citing 3 Robert E. Lee, *North Carolina Family Law* § 238, at 191 (4th ed. 1981)), *disc. review denied*, 309 N.C. 822, 310 S.E.2d 351 (1983). The *Newman* court held that "a stepparent is not under a blanket obligation to support children of his spouse's former marriage." *Id.*; *see also Lee, supra*, § 228.5, at 73 (Cum. Supp. 1995). The manifest intent of the Newman rule is to establish the obligations of a stepfather toward his wife's children which are not his own.

In *Duffey v. Duffey*, 113 N.C. App. 382, 385, 438 S.E.2d 445, 447 (1994), we held that N.C. Gen. Stat. § 50-13.4(b) (1995) requires the natural or adoptive father and mother to be primarily liable for the support of a minor child. Additionally, this statute provides that any other person, agency, organization or institution standing *in loco parentis* is secondarily liable. *Id.* Since defendant was *in loco parentis* to Kandace during the marriage, as found by the lower court, he is at most only secondarily liable for the support of his stepdaughter.

Circumstances that may require a person *in loco parentis* to pay child support may include, but are not limited to: (1) the relative ability of the natural or adoptive parents to provide for the support *or* (2) the inability of one or more of them to provide support, and the needs and estate of the child. *Duffey*, 113 N.C. App. at 385, 438 S.E.2d at 447; N.C. Gen. Stat. § 50-13.4(b). We observe that no evidence exists in the record which might trigger the obligation of this defendant standing *in loco parentis*. Even though the record indicates that plaintiff is in need of child support for the minor children, the record is devoid of any evidence indicating the capability of the natural father to pay for Kandace's support. Since primary responsibility of Kandace's biological father has not been determined and no effort has been made to locate him, secondary liability will not attach to require defendant to pay.

In addition, the court may not order that support be paid by a person standing *in loco parentis* absent evidence and a finding that such person, agency, organization or institution has voluntarily assumed the obligation of support in writing. *Duffey*, 113 N.C. App. at 385, 438 S.E.2d at 447; N.C. Gen. Stat. § 50-13.4(b). Although defendant signed a voluntary support agreement until more permanent arrangements could be made, the writing was not executed with the formalities required by law. We believe that N.C. Gen. Stat. § 52-10.1, which deals with separation agreements, and § 50-13.4(b), which con-

cerns primary liability for child support of natural or adoptive parents and secondary liability for persons or entities standing *in loco parentis*, must be construed *in pari materia*. Thus, we conclude that the General Assembly intended that the writing referred to in § 50-13.4(b) be executed in accordance with the requirements of § 52-10.1. Therefore, the written agreement in the case *sub judice* should have met the formalities of § 52-10.1.

Since the formalities required by *Duffey* and N.C. Gen. Stat. § 50-13.4(b) and § 52-10.1 for the writing were ignored, defendant could not be required to pay child support even if both Kandace's natural parents (those primarily liable) were deemed unable to pay. If the rule were otherwise, a stepparent *in loco parentis* could find himself with a legal duty of support without the formalities required to bind a biological or adoptive parent to an identical obligation. Such a result is illogical, not in the interest of public policy, as it places a stricter duty on a stepparent *in loco parentis*, than on a biological or adoptive parent. See N.C. Gen. Stat. § 110-133 (1995) (both the current statute, amended effective 1 January 1996, and the predecessor statute require a written support agreement, acknowledged before a certifying officer or notary public and approved by the court, before a biological or adoptive parent is legally bound to pay child support).

A person *in loco parentis* can make themselves liable for child support by signing a written agreement. *Duffey*, 113 N.C. App. at 385, 438 S.E.2d at 447. This case is distinguishable from *Duffey* because the formalities required by N.C. Gen. Stat. § 52-10.1 were present there. The divorce decree incorporated the writing as well. In addition, the husband in *Duffey* clearly agreed in the writing to continue supporting his stepchildren after dissolution of the marriage. In contrast, the voluntary support agreement signed by the parties in this case was not acknowledged. The stepfather ambiguously agreed to support his stepchild only "until more permanent arrangements were decided upon."

For the foregoing reasons, we reverse and remand the trial court's order requiring defendant to pay for child support and provide other benefits for his stepdaughter Kandace Joy Leann Willis Moyer.

Reversed and remanded.

Judges EAGLES and WYNN concur.