ATTORNEY FOR APPELLANT
C. Richard Marshall
Columbus, Indiana

ATTORNEY FOR APPELLEE
Kathleen M. Sweeney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 03S05-0608-CV-293

IN RE THE MARRIAGE OF,

VIRGINIA (ENGLAND) SNOW,

*Appellant (Petitioner below),*

v.

STEWARD ENGLAND,

*Appellee (Respondent below).*

Appeal from the Bartholomew Superior Court, No. 03D02-0011-DR-228
The Honorable Roderick D. McGillivray, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 03A05-0602-CV-56

**March 13, 2007**

**Shepard, Chief Justice.**

During their marriage, Steward England and Virginia (England) Snow became guardians of Snow's grandson from a prior marriage. The parties later divorced, submitting a property settlement agreement, which the trial court incorporated into their dissolution decree.

After the dissolution, England remarried, withdrew as guardian, and sought modification of the decree's section about payments for the benefit of the grandson. The trial court granted

modification, and the Court of Appeals affirmed.  We conclude that termination of guardianship was not grounds for modifying the dissolution decree.

**Facts and Procedural History**

Virginia Snow married Steward England in 1978.  On April 16, 1990, Snow's son from a prior marriage fathered J.H. out of wedlock in South Carolina.  Snow and England brought J.H. to Indiana to raise him.  On August 27, 1990, in the Bartholomew Circuit Court, Snow and England obtained joint guardianship over J.H.

Ten years later, Snow filed for dissolution.  Snow and England executed a settlement agreement, by which the parties specified a distribution of the marital property, agreed to "joint custody" and stipulated that England would make payments to Snow for J.H.'s care.  A section of the agreement entitled "Child Support" provided:

> There shall be no child support per se paid by either party to the other for and on behalf of [J.H.].  [England] shall pay the amount of $300.00 as a clothing allowance two (2) times per year, on or before August 1st of each year and on or before April 1st of each year unless otherwise agreed between the parties. [England] shall also pay for all school book and related fees connected with [J.H.'s] elementary, middle school and secondary education.  [England] will additionally pay the amount of $50.00 per week to [Snow] for food and miscellaneous expenses associated with [J.H.].  [England] shall also maintain [J.H.] as a dependent on his health insurance and pay all deductible and uninsured expenses.

(Appellant's App. at 103.)  The court incorporated the agreement into its final decree of dissolution on October 19, 2001.

Following the dissolution, J.H. lived primarily with England, and Snow and England proceeded in accordance with the decree.  In 2005, England remarried and subsequently petitioned to resign as guardian of J.H.  The court recognized England's resignation on June 3, 2005.

England simultaneously petitioned to modify the 2001 dissolution decree. He sought to "remove all references requiring him to make any payments to [Snow] for the benefit of [J.H.]." (Appellant's App. at 113.)

Snow moved to dismiss. The trial court denied this motion and granted England's petition to modify. The Court of Appeals affirmed. Snow v. England, No. 03A05-0602-CV-56, slip op. at 7 (Ind. Ct. App. Jun. 21, 2006). We granted transfer, vacating that opinion, and now reverse.

## Standard of Review

When reviewing a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim, we accept as true the facts alleged in the petition. As we said in Martin v. Shea, "a complaint is not subject to dismissal under Trial Rule 12(B)(6) unless it appears to a certainty that plaintiff would not be entitled to relief under any set of facts." 463 N.E.2d 1092, 1093 (Ind. 1984). Thus, we read England's petition to modify the dissolution decree in the light most favorable to him.

Snow advances two legal theories for finding that modification is inappropriate and that her motion to dismiss should be granted. First, she argues that England is *in loco parentis* to J.H. and that England is thus obligated to pay child support as if he were J.H.'s natural father. Second, she argues that England failed to demonstrate any "changed circumstances" that justify modification of the dissolution decree under Ind. Code § 31-16-8-1.

## I. *In Loco Parentis* Is Inapposite

Snow strongly urges that the doctrine of *in loco parentis* supports her position. *In loco parentis* means "in the place of a parent." Black's Law Dictionary 803 (8th ed. 2004). The doctrine "refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary

to legal adoption.  It embodies the two ideas of assuming the parental status and discharging the parental duties."  Niewiadomski v. United States, 159 F.2d 683, 686 (6th Cir. 1947).  This status results from intention, see id., and generally may be terminated at any time.  See R.D.S. v. S.L.S., 402 N.E.2d 30, 33 (Ind. Ct. App. 1980).

Historically, *in loco parentis* has been deployed to protect schools and teachers from liability for restricting and disciplining their pupils.  See, e.g., Indiana State Pers. Bd. v. Jackson, 244 Ind. 321, 192 N.E.2d 740 (1963); see also William Blackstone, 1 Commentaries 441.  It has likewise served as a basis for the authority of juvenile courts.  See, e.g., Adams v. State, 244 Ind. 460, 193 N.E.2d 362 (1963).

Courts commonly hold that a person *in loco parentis* has a duty of child support while that relationship exists.  See, e.g., Moyer v. Moyer, 122 N.C. App. 723, 471 S.E.2d 676 (1996); Taylor v. Taylor, 279 So.2d 364 (Fla. Dist. Ct. App. 1973); Fuller v. Fuller, 247 A.2d 767 (D.C. 1968).  Most courts also agree, however, that absent an intent to continue *in loco parentis*, a stand-in parent does not have a duty of support following a marriage dissolution.  See, e.g., Moyer, 122 N.C. App. at 724-26, 471 S.E.2d at 678-79 (no post-dissolution child support obligation for *in loco parentis* stepfather unless he signs a written agreement evidencing intent to continue *in loco parentis*); Taylor, 279 So.2d at 366; Fuller, 247 A.2d at 770; see also R.D.S., 402 N.E.2d at 33.  And indeed, some courts go so far as to find that *in loco parentis* does not require a support obligation at all.  See, e.g., Drawbaugh v. Drawbaugh, 436 Pa. Super. 57, 61-63, 647 A.2d 240, 242-43 (1994).

Addressing this question for the first time, we see a number of public policies that militate against imposing a child support obligation on stand-in parents, such as custodians and guardians.  First, we note that Indiana policy disfavors entering a support order against adults who are not natural parents.  See Fairrow v. Fairrow, 559 N.E.2d 597 (Ind. 1990) (statutes and sociological evidence favor supporting parent/child relationship; support order against adult known not to be parent is unjust).

4

Second, it makes little sense to require child support from a person *in loco parentis* when that status is temporary in nature and essentially voluntary. The stand-in parent would effectively be able to choose whether or not he or she should be required to pay child support simply by choosing to continue or discontinue the relationship. It also seems unwise to create a layer of financial risk for adults who voluntarily provide financial and emotional support to children not their own. Lastly, it is difficult to imagine imposing parallel obligations on the institutions (like juvenile courts or universities) to which *in loco parentis* is commonly deployed. Therefore, we hold that when a relationship of *in loco parentis* exists, that status alone is an insufficient basis for imposing a child support obligation on the stand-in parent.

## II. Termination of Guardianship Alone Is Not Grounds for Modification

Snow's contention that the dissolution decree and the settlement agreement obligate England to support J.H. is a proposition of greater weight.

The parties disagree about whether the first sentence of the settlement section entitled "Child Support," which says there will be "no child support per se," means that the payments described are child support or not child support. This determination bears on whether the dissolution decree may be modified. There are three possible interpretations of this language, and as we will demonstrate shortly, we think England cannot prevail under any of them.

Our dissolution statute is such that the provision at issue requiring England's payments for J.H.'s benefit must fall into one of three statutory categories: "(1) the maintenance of either of the parties; (2) the disposition of any property owned by either or both of the parties; [or] (3) the custody and support of the children of the parties." Ind. Code Ann. § 31-15-2-17(a) (West 2007).

*A. Is It Maintenance?* If the provision for England's payments could be somehow characterized as maintenance for Snow, it could fall into one of four categories: incapacity, caregiver, rehabilitation, or voluntary. Indiana courts may order only the first three of these, and

5

only under conditions specified by statute. <u>Voigt v. Voigt</u>, 670 N.E.2d 1271, 1276-77 (Ind. 1996) (discussing Ind. Code Ann. § 31-1-11.5-11(e) (West 1995) (current version at Ind. Code Ann. § 31-15-7-2 (West 2007))).

For example, a court may order incapacity maintenance if it "finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected." Ind. Code Ann. § 31-15-7-2(1). A court may impose caregiver maintenance if it finds that a spouse lacks sufficient property for the spouse's needs and the spouse must forego employment to care for a child with a physical or mental incapacity. Ind. Code Ann. § 31-15-7-2(2). Lastly, a court may order rehabilitative maintenance for no more than three years if it finds that a spouse needs support while acquiring sufficient education or training to obtain an appropriate job. Ind. Code Ann. § 31-15-7-2(3); <u>see also</u> <u>Voigt</u>, 670 N.E.2d at 1277. Nothing in the agreement or in either party's arguments suggests that England's payments constitute incapacity, caregiver, or rehabilitative maintenance.

A fourth form of maintenance may be incorporated into a dissolution decree, but only when both parties ask the court to do so ("the parties may agree in writing"). <u>See</u> <u>Voigt</u>, 670 N.E.2d at 1277. If England's payments could be characterized as maintenance, they would be of this general variety, which cannot be modified by a court unless both parties consent to alter their original contract. <u>See</u> <u>id.</u> at 1280. That has not happened here.

*B. Is It Custody and Support?* Indiana law permits a custody and support provision in a settlement agreement only for "children of the parties" to the agreement. Ind. Code Ann. § 31-15-2-17(a)(3). This section complements the broader declaration that Indiana's dissolution law governs only "children of both parties to the marriage." Ind. Code Ann. § 31-9-2-13 (West 2007). This is a term of art that refers only to natural and adoptive parents. <u>Russell v. Russell</u>, 682 N.E.2d 513, 515-16 (Ind. 1997). Obviously, Snow and England were neither. Moreover, the disputed provision of the parties' agreement disavows that it constitutes child support. At least as contemplated by the dissolution statutes, that seems correct. The statutory provisions for modifying child support thus do not apply.

*C. Is It Property Division?* The final possibility is that the disputed language sets out a property disposition. An agreement for division of property is economic in nature – an ordinary contract. See Bowman v. Bowman, 567 N.E.2d 828 (Ind. Ct. App. 1991). The agreement may cover a variety of circumstances, including some that courts could not order on their own, like general maintenance. See Kizziah v. Kizziah (In re Marriage of Kizziah), 651 N.E.2d 297 (Ind. Ct. App. 1995). As with other contracts, a division of property may only be modified according to the terms of the agreement, if the parties' consent, or if fraud or duress occurs. Ind. Code Ann. §§ 31-15-2-17(c), -7-9.1 (West 2007). Here, the parties do not consent, neither fraud nor duress has been alleged, and the settlement agreement seems to contemplate no modification.[1] Modification may not be had if the agreement is for division of property.

In sum, whether the contract provision entitled "Child Support" is characterized as maintenance, child support, or disposition of property, the termination of guardianship has little practical effect. Given the facts and the decree before us, termination of guardianship is not a basis for modifying the dissolution decree.

**Conclusion**

Because England cannot prevail under any interpretation of the decree, we reverse the order of modification and direct the trial court to grant Snow's motion to dismiss.

Dickson, Sullivan, Boehm, Rucker, JJ., concur.

---

[1] The agreement states in relevant part, "it is the mutual desire of the parties hereto to make a permanent, complete and final adjudgment of all their property and legal rights of every kind and nature whatsoever." (Appellant's App. at 102.)