Derek H. ELWOOD, Appellant-
Respondent,

v.

Wendy A. PARKER, Appellee-
Petitioner

Court of Appeals Case No.
46A05-1609-DR-2005

Court of Appeals of Indiana.

May 30, 2017

**836**

Attorneys for Appellant: Bryan L. Ciyou, Julie C. Dixon, Darlene R. Seymour, Ciyou & Dixon, P.C., Indianapolis, Indiana

ATTORNEYS FOR APPELLEE, Elizabeth A. Flynn, Kurt R. Earnst, Braje, Nelson & Janes, LLP, Michigan City, Indiana

Mathias, Judge.

■ Wendy Parker ("Parker") sought arrears of child support owed by Derek Elwood ("Elwood"), Parker's ex-husband and father of her two daughters, since 1995. LaPorte Superior Court ordered Elwood to pay more than $150,000 in support arrears plus interest and attorneys' fees. From this order, Elwood now appeals.

■ We affirm.

## Facts and Procedural Posture

■ Parker is a dentist in Michigan City, Indiana. Elwood is an insurance agent in Oshkosh, Wisconsin. Parker and Elwood were married for a short time in the 1990s when they both lived in Michigan City. During their marriage, they had two children: J., their elder daughter, and E., their younger daughter. Elwood and Parker divorced in 1995 soon after E. was born. LaPorte Superior Court gave Parker custody of the two girls and ordered Elwood to pay support in the amount of $169.62 per week. Elwood moved in with his parents, who lived in Michigan City. He made fewer than four months' payments totaling $2,056.96 and then disappeared. Elwood never made another payment.

■ Elwood joined the military and moved to Texas for basic training but left the military after seven months and continued to live in Texas. He then moved to Wyoming, then to Illinois, and finally to Wisconsin, where he settled. Elwood started a business, remarried, and had two daughters with his new wife. During these years, Elwood never told Parker (or LaPorte Superior Court) where he was or where he was going, though he did tell his parents. Elwood never contacted Parker or their daughters at all, and has no relationship with them. He never sought parenting time, a modification of the support order, or any other judicial remedy. Elwood's sole concession to his former life was to pay nominal amounts in annual support fees when notice of these was received by his parents in 2003, 2005, and 2007. See Ind. Code § 33-37-5-6 (requiring child support obligors to pay annual support fee).

■ This was all fine by Parker, who never sought Elwood's involvement in their daughters' lives, and in fact, as the trial court found, "actively sought to avoid [his] involvement . . . ." Appellant's App. p. 9. About a year after the divorce, Parker petitioned to have the girls take her last name, serving Elwood notice by publication in a local newspaper though Elwood's last known address was at his parents' house. The girls had no relationship with their paternal grandparents and were not even aware who their genetic father was until they were teenagers. In 2012, when Parker sought a guardianship over eighteen-year-old J. for medical reasons, Elwood's name was not listed on the Parker's petition as a "person[ ] mostly closely related by blood or marriage" to J. Tr. p. 58. In 2013, Parker had E. emancipated and

again served Elwood by publication. However, in 2015, when Parker sought the instant determination of support arrears, Parker served Elwood personally by certified mail.

For twelve years during J.'s and E.'s minority, Parker was in a relationship with Kelly Newcomb ("Newcomb"). Parker and Newcomb were married for six years but then divorced. During Parker and Newcomb's relationship, the girls thought of Newcomb as their father and referred to him that way. Newcomb supported and cared for the girls as a "partner" and stepfather would. Tr. p. 133. Even after Parker and Newcomb were divorced, Newcomb carried the girls on his health insurance, and J. and E. remain close to him, though he now lives in Florida. Newcomb was aware of Elwood's outstanding obligations to J. and E. and never pushed Parker to enforce them, but Newcomb never expected or intended that his support would relieve Elwood of them.

On November 13, 2015, two years after E.'s emancipation and twenty years after Parker and Elwood's divorce, Parker filed a motion in LaPorte Superior Court to determine Elwood's support arrears. Elwood responded and petitioned the court to terminate or modify his support obligation. After briefing and argument at a hearing on May 13, 2016, the court issued findings of fact, conclusions of law, and an order on August 3, 2016. Elwood was ordered to pay

> $157,555.46 in past due support[, $169.62 per week from the date of the divorce to the date of E's emancipation, minus payments already made by Elwood,] plus interest from [the date of filing of Parker's motion] at 1 1/2% per month in the amount of $20,434.72, plus interest accruing from the date of this order at the statutory rate of 8% per annum. [Elwood] should also be responsible for

[Parker]'s attorney's fees in the amount of $2,878.69 which shall be due ... within 60 days....

Appellant's App. p. 17.

Below, Elwood claimed he was entitled to some amount of equitable mitigation of the support arrears, with arguments sounding in laches, estoppel, and unjust enrichment. He renews these arguments on appeal. As framed by Elwood, the issue before us is whether "a noncustodial parent should ... be forced to pay a child support arrearage after twenty years have passed when Mother has alienated the Children [from Father] and a third party has acted *in loco parentis* [to the Children] and supported the Children." Appellant's Br. at 9. Elwood characterizes this as a question of "first impression[.]" *Id.*

## Standard of Review

Where, as here, the trial court has entered findings of fact and conclusions of law on a motion to determine child support arrearage, we apply a two-tiered standard of review. *Dedek v. Dedek*, 851 N.E.2d 1048, 1050 (Ind. Ct. App. 2006). We review for clear error whether the evidence supported the findings, then whether the findings supported the judgment. *Id.* Error is clear when our review of the record leaves us firmly convinced that a mistake has been made. *Id.* We review de novo the trial court's legal conclusions and choice of legal standard. *Id.*

## Discussion and Decision

As part of a divorce proceeding between two parents of a child, the court may order either or both "to pay any amount reasonable" for the child's support. Ind. Code § 31-16-6-1. The support obligation ordinarily terminates by operation of law once the child turns nineteen, *id.* § 6(a), or if the child is emancipated. *Id.* § 6(a)(1). A parent subject to a support

order must make payments on the order's terms until they are modified or set aside by a court. *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007). Subject to two narrow exceptions inapplicable here,[1] such modification may not be retroactive. *Id.* "Our law regards custodial parents who receive child support funds as trustees who hold the funds for the use and benefit of the child.... [O]nce funds have accrued to the child's benefit under a court order, the court may not annul them in a subsequent proceeding." *Nill v. Martin*, 686 N.E.2d 116, 118 (Ind. 1997) (citations omitted).

■ ■ Here, Elwood effectively sought a retroactive modification of the support order entered as part of the divorce proceedings in 1995. The trial court correctly ruled that "[a] court may not retroactively modify an obligor's duty to pay a delinquent support payment absent certain [here inapplicable] exceptions." Appellant's App. p. 21. That is the end of the matter.

■ ■ Nevertheless, Elwood seeks the intervention of "equity and public policy...." Appellant's Br. at 11. The public policy of this state, "[e]xpressed by all three branches of [its] government," is to "protect[ ] the welfare of children." *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 599 (Ind. 1994) (voiding contract purporting to relieve father of support obligation). This is the primary purpose of the rule against retroactive modification. *See Whited*, 859 N.E.2d at 662. We know of no public policy in favor of protecting delinquent child support obligors.

■ ■ Equity does not intervene on Elwood's behalf for the same reason: as quasi-trustees, parents cannot defeat a child's right to court-ordered support by their own conduct. Thus, neither laches nor estoppel will bar a claim for support arrears. *Schrock v. Gonser*, 658 N.E.2d 615, 616 (Ind. Ct. App. 1995), *trans. denied*; *Ort v. Schage*, 580 N.E.2d 335, 336–37 (Ind. Ct. App. 1991); *Pickett v. Pickett*, 470 N.E.2d 751, 754–55 (Ind. Ct. App. 1984). Similarly, Parker cannot be "unjust[ly] enrich[ed]" or enjoy a "double recovery" by Elwood's discharge of his court-ordered obligation to his daughters. Appellant's Br. at 13. Elwood argues that Parker's "unclean hands" bar her claim, *id.* at 14, but he gets it backwards. It is not Parker's hands which must be clean before she asserts her *legal* claim, but Elwood's before he asserts his (in this case unavailable) *equitable* defense to that claim. *See, e.g.*, *Villegas v. Silverman*, 832 N.E.2d 598, 607 (Ind. Ct. App. 2005) ("[H]e who comes into equity must come with clean hands."), *trans. denied*.

■ ■ Finally, Elwood invokes the doctrine of *in loco parentis*. It is usually the state that is said to stand *in loco parentis*—in place of a parent—to a child in certain disciplinary contexts. *Snow v. England*, 862 N.E.2d 664, 666 (Ind. 2007). A person who stands *in loco parentis* to a child may be found to have incurred a duty to support the child while the relationship exists, but the relationship itself does not give rise to such a duty without more. *Id.* at 667. However, Elwood has pointed us to no authority, and we find none, holding that such a relationship can relieve a ge-

---

1. "Retroactive modification is permitted when ... the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the [child support order], or ... the obligated parent takes the child into his ... home, assumes custody, provides necessities, and ex- ercises parental control for such a period of time [as effects] a permanent change of custody ...." *Whited*, 859 N.E.2d at 662. Here, the parties reached no agreement of any description, and Elwood never had custody of J. or E. after the divorce.

netic parent of his court-ordered support obligation. It would indeed work an "unjust enrichment," Appellant's Br. at 13, and a windfall to Elwood to allow him to benefit from Newcomb's love and solicitude for J. and E.

## Conclusion

The trial court did not clearly err when it ordered Elwood to pay the full amount of support arrears owed by him since 1995. Its judgment is therefore affirmed.

Affirmed.

Baker, J., and Pyle, J., concur.