# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 22 2018, 7:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jason R. Delk
Daniel J. Gibson
Delk McNally LLP
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory A. Neibarger
Briana L. Clark
Meaghan Klem Haller
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

John H. Brooke
Brooke-Stevens, P.C.
Muncie, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Samuel D. Pitman, II, Individually and as Personal Representative of the Estate of Samuel D. Pitman, the Estate of Samuel D. Pitman, and Steven Pitman,

*Appellants-Plaintiffs,*

v.

Stanley Pitman, Selena Hall, Drury Hall, and SDP Manufacturing, Inc.,

*Appellees-Defendants.*

February 22, 2018

Court of Appeals Case No. 18A04-1701-PL-185

Appeal from the Delaware Circuit Court.
The Honorable Marianne L. Vorhees, Judge.
Trial Court Cause No. 18C01-1304-PL-15

**Shepard, Senior Judge**

[1] Samuel D. Pitman, II, individually and as the executor of the Estate of Samuel D. Pitman, the Estate itself, and Steven Pitman appeal the trial court's judgment in favor of Stanley Pitman, Selena Hall, Drury Hall, and SDP Manufacturing, Inc. We affirm.

[2] SDP is a family-owned, closely-held corporation. It was originally incorporated in 1992. SDP manufactures digging devices that are used to install telephone poles and similar equipment in hard-to-navigate areas such as utility easements.

[3] SDP's original incorporators were Samuel Pitman, his wife Dixie Pitman, attorney John Brooke, and Samuel and Dixie's children: Samuel D. Pitman II (who we will refer to as David to avoid confusion), Steven Pitman, Stanley Pitman, Selena Hall, and Scott Pitman. All of the children worked at SDP at various times over the years. Later, an ownership share was granted to Selena's husband, Drury Hall.

[4] Samuel Pitman left SDP in 1995, retaining his two ownership shares in the company. David also left the company in 1995, retaining his one share. Before they left SDP, Samuel and David started S.D. Pitman, Inc., which competes with SDP. Steven left SDP in 1998, but he also retains his ownership share.

[5] Stanley, Selena, and Drury have continued to run SDP, and Scott is an employee. In 1998, SDP created a deferred compensation plan and trust for key management employees. That same year, Stanley and Selena incorporated

Easement Equipment Specialists (EES), a separate entity which purchased manufacturing equipment that was in turn leased to SDP. In 2003, SDP created a second deferred compensation plan and trust, which was intended to keep Scott as an employee. Also in 2003, Stanley, Selena, and Scott incorporated SSS Land Group, which purchased land and leased it to SDP. Stanley and Selena also created Southpaw Enterprises, which was a pass-through entity through which SDP's laborers were paid.

[6] From 1995 through today, the siblings (and Dixie and Samuel, prior to her death in 1996 and his death in 2011) have disputed the way SDP and its assets are managed, including SDP's intellectual property and SDP's deferred compensation plans. In 1995, SDP, Stanley, Selena, Steven, and Dixie sued David, Samuel, and S.D. Pitman, Inc. in Blackford Circuit Court, alleging claims that included theft of trade secrets. Steven was dismissed from the lawsuit at his request after he left SDP. David and Samuel asserted counterclaims such as breach of fiduciary duty. As we discuss in more detail below, David and Samuel argued that Stanley, Selena, and Scott were managing SDP for their own personal benefit, to the detriment of SDP's other shareholders.

[7] The Blackford Circuit Court dismissed the case with prejudice in 2005, per the parties' agreement. No money was exchanged as part of the dismissal. Instead, the parties agreed "to stop all the court proceedings and be able to go on our separate ways." Tr. Vol. II, p. 141.

[8] Meanwhile, in 1998, Samuel, David, and Steven sued SDP in Delaware County, seeking a court-ordered shareholders' meeting. They claimed the shareholders had failed to schedule a required meeting, in violation of SDP's bylaws. They later sought to amend their complaint to request SDP's dissolution, arguing the shareholders had "conducted a sham Annual Meeting." Tr. Ex. Vol. II, p. 238. They further alleged the "incumbent Directors," referring to Stanley, Selena, and Drury, were "motivated by a fraudulent desire to maintain their corporate authority." *Id.* at 242. This case was later dismissed without prejudice. *See also Pitman v. Pitman*, 717 N.E.2d 627 (Ind. Ct. App. 1999) (dispute between Steven and Stanley over Steven's failure to return an SDP-owned backhoe that he had borrowed).

[9] The current case began in 2013, when David, Samuel's estate, and Steven (who we collectively refer to as David) sued Stanley, Selena, Drury, and SDP (who we collectively refer to as Stanley), along with the two employee benefit trusts. David claimed Stanley breached a fiduciary duty to manage the company fairly and in good faith for the benefit of all shareholders. David further claimed Stanley engaged in constructive fraud by paying inflated salaries and bonuses to SDP's officers and by granting dividends to Stanley, Selena, and Drury that were not paid to other shareholders.

[10] Stanley filed an answer denying the alleged breach of fiduciary duty and a motion to dismiss the claim of constructive fraud. Among other defenses, Stanley argued David's complaint was "barred, in whole or in part, by the doctrines of estoppel, equitable estoppel, release, waiver, accord and

satisfaction, and payment." Appellants' App. Vol. II, p. 94. The court denied Stanley's motion to dismiss. Stanley next filed an amended answer in which he restated his defenses of estoppel and equitable estoppel.

[11] On June 6, 2014, Stanley filed a motion for partial summary judgment. David responded, and Stanley replied. On January 13, 2015, the court granted the motion as to the two employee benefit trusts, dismissing them from the case.

[12] The parties attempted to mediate their case but were unsuccessful. On June 1, 2016, Stanley filed another motion for summary judgment, alleging David's claims were barred by res judicata or collateral estoppel. Stanley also filed a motion to amend his answer to add a defense of res judicata. The court granted the motion to amend, stating David would not be prejudiced. After a bench trial limited to the issues of res judicata and collateral estoppel, the court issued findings of fact and conclusions thereon, concluding David's claims were barred. This appeal followed.

[13] David first argues the court erred in allowing Stanley to amend his answer to add an affirmative defense of res judicata, claiming Stanley waived that defense by failing to include it in his initial answer to the complaint and instead waiting three years to request the amendment.

[14] When a party seeks to amend a responsive pleading after the deadline has elapsed, the amendment is allowed "only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Ind. Trial Rule 15(A). It is within the trial court's sound discretion to grant a

party leave to amend an answer to add an affirmative defense. *Shewmaker v. Etter*, 644 N.E.2d 922 (Ind. Ct. App. 1994), *adopted by Supreme Court*, 659 N.E.2d 1021 (1995). In general, leave to amend should be given unless the amendment would result in prejudice to the opposing party. *Fowler v. Brewer*, 773 N.E.2d 858 (Ind. Ct. App. 2002) (quotation omitted), *trans. denied*.

[15] David argues the amendment prejudiced him because he had already spent hundreds of thousands of dollars in attorney's fees and expert witness fees litigating the case when the amendment occurred. We disagree. David cannot claim to be surprised by the issue because Stanley's initial answer raised "estoppel" as a defense, which should have put him on notice that past conduct was at issue. Appellant's App. Vol. II, p. 94. Further, the trial court allowed the parties to conduct additional discovery on the newly-added affirmative defense, allowing David time to investigate and adjust his strategy. For these reasons, the trial court acted within its discretion by allowing the amendment.

[16] David next argues the court erred in admitting certain evidence during the evidentiary hearing, claiming the court considered evidence that was irrelevant to the parties' claims. Stanley responds that David waived this argument by failing to timely object during trial. We disagree with Stanley because David objected on grounds of relevance at several points during the hearing. *See* Reply Br. p. 22 (listing objections in transcript).

[17] A ruling regarding the admission or exclusion of evidence is reviewed for an abuse of discretion. *Carlson v. Warren*, 878 N.E.2d 844 (Ind. Ct. App. 2007).

We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[18] In general, relevant evidence is admissible and irrelevant evidence is not admissible. Indiana Evid. Rule 402. Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Ind. Evidence Rule 401.

[19] David claims Stanley presented irrelevant evidence as to: (1) the creation of one of the employee benefit trusts and the incorporation of EES and SSS Land Group; and (2) the circumstances under which Samuel, David, and Steven left SDP. Having reviewed the evidence, and keeping in mind that the main claim on appeal is the applicability of res judicata, we conclude the trial court did not abuse its discretion in admitting the evidence. The timing and circumstances of the creation of the trusts and the corporations are relevant to whether David could have addressed those issues in the Blackford County litigation. Similarly, evidence pertaining to the circumstances under which Samuel, David and Steven left SDP are relevant to establishing David's knowledge of how the defendants ran SDP and compensated executives during the Blackford County litigation. The trial court did not abuse its discretion.

[20] The final issue is whether the trial court erred in granting judgment to Stanley on grounds of res judicata. The court entered findings of fact and conclusions thereon, and our standard of review is two-tiered. *Briles v. Wausau Ins. Cos.*, 858

N.E.2d 208 (Ind. Ct. App. 2006). We review for clear error whether the evidence supported the findings, then whether the findings supported the judgment. *Elwood v. Parker*, 77 N.E.3d 835 (Ind. Ct. App. 2017), *trans. denied*. Error is clear when our review of the record leaves us firmly convinced that a mistake has been made. *Id.* We do not reweigh evidence and consider only the evidence favorable to the trial court's judgment. *Stevenson v. Cty. Comm'rs of Gibson Cty.*, 3 N.E.3d 1062 (Ind. Ct. App. 2014), *trans. denied*.

[21] Res judicata serves to prevent repetitious litigation of disputes that are essentially the same. *Hilliard v. Jacobs*, 957 N.E.2d 1043 (Ind. Ct. App. 2011), *trans. denied*. A claim is precluded under res judicata if these four requirements are met:

> (1) the former judgment must have been rendered by a court of competent jurisdiction;
>
> (2) the former judgment must have been rendered on the merits;
>
> (3) the matter now in issue was, or could have been, determined in the prior action; and
>
> (4) the controversy adjudicated in the prior action must have been between the same parties to the present suit or their privies.

*Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002 (Ind. Ct. App. 2003), *trans. denied*. A dismissal with prejudice is conclusive of the rights of the parties and is res judicata as to any claims that might have been litigated. *Id.* In determining whether res judicata applies, it is useful to inquire whether identical evidence will support the issues in both actions. *Id.*

[22] The crucial dispute here is whether David's current claims were determined, or could have been determined, in the Blackford County case, which was litigated from 1995 to 2005. In the Blackford County case, David and Samuel filed a counterclaim alleging "breach of fiduciary duty" by Stanley, Selena, and Scott. Tr. Ex. Vol. I, p. 222. Specifically, David and Samuel claimed Stanley, Selena, and Scott stood "in a fiduciary relationship to [SDP] and to other shareholders" and were not permitted to "promote their self interest in derogation of their fiduciary duty." *Id.* at 221. They further alleged Stanley, Selena, and Scott had "caused to be issued" three shares of SDP stock to an employee deferred compensation trust, which had the effect of advancing their own interests to the detriment of SDP, David, and Samuel. *Id.* at 221-22. David and Samuel argued Stanley, Selena, and Scott had "seize[d] control of the corporation by diluting the stock of the counterclaimants, [froze] out other shareholders and diminish[ed] the value of their interest in [SDP]." *Id.* at 222. David and Samuel requested compensatory damages and "remediation" of Stanley, Selena, and Scott's acts. *Id.*

[23] David and Samuel pursued discovery in the Blackford County case, sending 146 interrogatories to the plaintiffs. In addition, they requested a protective order to prohibit SDP's board of shareholders from meeting, claiming Stanley, Selena, and Scott were acting "for their exclusive benefit and for the purpose of enabling them to acquire a controlling interest in the corporation." *Id.* at 229. David and Samuel also accused them of "fraudulent" behavior "as to the other shareholders of [SDP]." *Id.* In 2002, David and Samuel informed the court

they were "in the process of pursuing their claims, but need[ed] additional time in which to complete discovery and complete their preparation for trial, if the case cannot be settled." *Id.* at Vol. II, p. 36.

[24] SDP's board of shareholders met while the Blackford County case progressed. During a meeting in 1998, David accused the board of misconduct including "fail[ure] to maintain proper corporate records, [failure to] properly conduct meetings, . . . issu[ing] cash bonuses and other sorts of misuse." *Id.* at 190. Further, David, Samuel and Steven filed a case in Delaware County in 1998 accusing SDP of failing to hold regularly scheduled shareholders' meetings and engaging in fraudulent behavior intended to freeze them out of the corporation's operations.

[25] In summary, during the long-running Blackford County litigation, David and Samuel argued that Stanley, Serena, and Scott breached their fiduciary duties as shareholders of SDP and engaged in fraudulent behavior to gain control of SDP, dilute the value of David and Samuel's shares, and enrich themselves through deferred compensation plans and undisclosed cash payments. David and Samuel further claimed Stanley, Serena and Scott had damaged the value of their shares in SDP. They pursued discovery as to the plaintiffs' claims and had ample opportunity to seek information about their counterclaims.

[26] In the current case, David alleged in his complaint that Stanley "took control over the operations of [SDP] to the complete exclusion of Samuel David Pitman, Samuel David Pitman II, and Steven Pitman." Appellants' App. Vol.

II, p. 69.  He further alleged that Stanley created a deferred compensation trust to "dilute the ownership interest" of David, Steven, and their father and exclude them from control of SDP.  *Id.*  David also claimed SDP's shareholders had not held regular meetings and refused to provide him with information as to salaries and bonuses for officers, as well as dividends or distributions.

David further accused Stanley of breaching his fiduciary duties by:

a. Freezing Plaintiffs out of the management and operation of the Corporation;

b. Freezing Plaintiffs out of the fruits and benefits of their shareholder/ownership interests in the Corporation, including compensation, benefits, distributions and dividends;

c. Failing to deal with Plaintiffs in a fair, honest and open manner with respect to the business and operation of the Corporation;

d. Failing to apprise Plaintiffs of certain significant management and financial decisions related to the Corporation;

e. Failing to make proper distributions of profits, earnings, and/or dividends to Plaintiffs;

f. Failing to follow corporate formalities with respect to the notice and meeting requirements for the shareholders and board of directors;

g. Improperly diluting the shareholder interest of Plaintiffs for an improper purpose and without following proper procedures;

h. Improperly withholding profits, earnings, dividends and distributions to Plaintiffs by diverting earnings of the Corporation back to the Individual Defendants in the form of inflated salaries, bonuses and corporate perks; and

i. Engaging in self-dealing by providing Individual Defendants with unreasonable compensation in an effort to prevent earnings from passing to the remaining shareholders.

[28] *Id.* at 74-75. David further alleged in the complaint that Stanley committed constructive fraud by deceiving him about SDP's income while paying himself "inflated salaries and bonuses," thus engaging in self-dealing. *Id.* at 76.

[29] Here, the trial court did not err in determining that David's claims of breach of fiduciary duty and constructive fraud could have been resolved during the Blackford County case and were thus barred by res judicata. The same issues – alleged hiding of information, self-dealing, improper salaries and bonuses – arose in both cases. Further, the specific acts David complains of, including the establishment of the deferred compensation trusts and the new companies that are owned by Stanley and sell equipment or rent land to SDP, occurred during the Blackford County case. David had ample opportunity to conduct discovery to develop his claims of breach of fiduciary duty and fraud in that case, during which he would have learned of SDP's method for calculating salaries, the existence of the deferred compensation trusts, and the existence of EES and SSS Land Group. *See Hilliard*, 957 N.E.2d 1043 (claims including breach of fiduciary duty and constructive fraud barred by res judicata; claims could have been raised in prior case involving the same contract).

[30] David argues that if res judicata bars his claims, then Stanley is free to commit new breaches of his fiduciary duties or additional acts of constructive fraud without being held accountable. He further states res judicata does not bar

claims based on acts that occurred after the prior litigation ended. As a general principle David is surely correct, but in this case he has not pointed to any actions that he could not have discovered and addressed in the Blackford County case. The record supports the trial court's findings that SDP has used the same formula to calculate directors' salaries since the 1990s. Further, there is no indication that SDP's agreements with EES and SSS Land Group have changed from the days of the Blackford County case. In addition, David and Steven separately and repeatedly expressed concerns about lack of access to SDP financial information while the Blackford County case was pending. The same evidence would have been used in both cases. *Cf. Afolabi v. Atlantic Mortg. & Inv. Corp.*, 849 N.E.2d 1170 (Ind. Ct. App. 2006) (mortgage foreclosure action not barred by res judicata due to prior foreclosure case; plaintiff alleged and demonstrated new wrong acts based on different evidence, specifically a new failure to make timely mortgage payments).

[31] We need not address the parties' arguments as to collateral estoppel. For the reasons stated above, we affirm the judgment of the trial court.

[32] Affirmed.

Vaidik, C.J., and Baker, J., concur.