## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 05 2020, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Maher Abuelreish
Carmel, Indiana

ATTORNEYS FOR APPELLEE

James J. Ammeen Jr.
Mark J. Liechty
Ammeen Valenzuela
  Associates LLP
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maher Abuelreish,<br>*Appellant-Respondent,*<br><br>v.<br><br>Hind M. Abuelreish,<br>*Appellee-Petitioner* | November 5, 2020<br><br>Court of Appeals Case No.<br>19A-DC-2899<br><br>Appeal from the<br>Hamilton Superior Court<br><br>The Honorable<br>Jonathan M. Brown, Judge<br><br>The Honorable<br>Jack A. Tandy, Senior Judge<br><br>Trial Court Cause No.<br>29D02-1702-DC-1097 |

**Vaidik, Judge.**

# Case Summary

[1] Following the divorce of Maher Abuelreish ("Husband") and Hind M. Abuelreish ("Wife"), each party filed petitions alleging that the other party was in contempt of their settlement agreement. The trial court largely found for Wife, and Husband now appeals. We reverse the trial court's order that Husband must pay $15,000 of Wife's attorney's fees but affirm in all other respects.

# Facts and Procedural History

[2] In February 2017, Wife filed a petition to dissolve her marriage to Husband. The parties entered into a settlement agreement, which the trial court incorporated into its August 23, 2017 decree of dissolution. Relevant here, the settlement agreement addresses several pieces of real estate and the parties' business:

> **Marital Residence.** The parties own a parcel of real estate located at 11711 Rolling Spring[s] Drive, Carmel, Indiana 46033 ("Marital Residence"). Husband and Wife agree to list the Marital Residence for sale within thirty (30) days of the date of entry of the Decree of Dissolution and agree to divide the net proceeds from the sale equally between them. Husband and Wife acknowledge there is a mortgage on the Marital Residence in favor of GSF Mortgage Corporation and Husband shall make the mortgage payments on the Marital Residence until it is sold and the mortgage balance shall be satisfied at the closing on the sale of the Marital Residence. Husband shall pay all expenses and obligations of the Marital Residence, including but not limited to

the remaining mortgage, home equity line of credit, insurance, taxes, and Utilities as of the Effective Date of this Agreement.

**Fishers Residence.** Wife shall retain ownership of the real estate located at 8829 Moll Drive, Fishers, Indiana 46038. Wife shall be responsible for the mortgage indebtedness on the Fishers Residence to Nationstar Mortgage.

**Oak Lawn Properties.** Husband owns two (2) properties in Oak Lawn, Illinois, commonly known as 9739 Oak Park Avenue, Oak Lawn, Illinois 60453 and 9650 Merton Avenue, Oak Lawn, Illinois 60453.

Husband agrees to list the 9650 Merton Avenue property for sale within thirty (30) days of the date of entry of the Decree of Dissolution, with the proceeds from the sale going first to satisfy the mortgage indebtedness to Nationstar Mortgage and the remaining net proceeds to be divided equally between Husband and Wife. Husband and Wife are to be responsible for mortgage payments to Nationstar Mortgage and expenses of maintaining the property pending the sale.

Husband shall retain ownership of the 9739 Oak Park Avenue [property] and shall be solely responsible for the mortgage indebtedness thereon to Bank of America.

**Abby's Market, Indianapolis.** Husband and Wife agree to share equally in the net profits of their operation of Abby's Market, located at the City Market on East Market Street, Indianapolis, Indiana.

Appellant's App. Vol. II pp. 22-24 (formatting altered). In addition, the settlement agreement addresses attorney's fees in the event of a "default":

If either Husband or Wife defaults in the performance of any of the terms, provisions or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the performance of any provisions of this Agreement, then the party found to be in default shall pay all expenses, including reasonable attorney's fees, incurred in connection with such enforcement proceedings.

*Id.* at 28-29.

[3] On December 5, 2018, Husband, representing himself, filed a petition alleging that Wife was in contempt for "refus[ing] to cooperate in listing the [Marital Residence]" and asked the court for permission to list it. Appellant's App. Vol. II p. 32. The next day, Husband filed a Petition to Modify Respondent's Obligation to Pay the Mortgage and Expenses of the Marital Residence. He asked the court to order Wife to pay the mortgage on the Marital Residence (although the settlement agreement required him to pay it) since Wife was living in the house and not trying to sell it. Wife then filed a petition alleging that Husband was in contempt for selling Abby's Market without her permission or giving her any of the proceeds and for not selling the Merton Avenue property in Illinois. The trial court set a hearing for January 3, 2019. Wife requested a continuance, and the court reset the hearing for March 21. In response to the resetting, Husband requested an emergency hearing. Specifically, Husband alleged that Wife "had the police remove [him] from" the Marital Residence and "moved into that home to the exclusion of [him]," leaving him "homeless." Appellant's App. Vol. III pp. 24-25. The court set a hearing on Husband's emergency motion for January 31.

Following this hearing, the trial court entered an order noting that the settlement agreement was "silent" as to who was to live in the Marital Residence until it was sold. *Id.* at 18. Finding that neither party had made a "meaningful effort to cooperate on the sale of the home," the court ordered the Marital Residence to "be placed for sale" "no later than March 22, 2019." *Id.* at 18-19. In addition, the court ordered the parties to "select a Realtor, sign the appropriate listing agreement, decide upon a listing price and work together to get the home sold." *Id.* at 19. The court cautioned the parties:

> 9. If the home is not on the market (listing agreement signed) by midnight on March 22, 2019, the Court will appoint a Commissioner to sell the home. If a listing contract is signed after midnight on March 22, 2019, it shall be held for naught as the parties no longer have the authority to sell the home.
>
> * * * * *
>
> 11. If the commissioner finds that Mother's presence in the home is hindering the sale in any manner, he/she may petition [the] Court to remove Mother from the home forthwith.

*Id.* at 19-20.

On March 18, Mother filed a notice of compliance, alleging that she had listed the Marital Residence with a realtor for $575,000. Husband filed a response, alleging that Wife did not consult him about a realtor or the listing price. The trial court set a status hearing for March 27. Following the hearing, the court ordered:

The Court has reset the hearing on all pending matters [to] September 5, 2019 at 1:30 p.m. Further, the Court has directed [Wife] to sell the [Marital Residence] and she may choose the realtor for the sale of this property. Further, [Husband] shall sell the property located at 9650 Merton Avenue, Oak Lawn, IL and he may choose a realtor for this sale. Both parties shall provide each other with copies of the respective listing agreements and notify each other with regards to closing dates/times. All closing documents shall be available to both parties.

Appellant's App. Vol. II p. 11.

[6] At the September 5 hearing, the trial court asked Father, who was still representing himself, if he wanted to present his case first, as he filed his contempt petition first. Tr. p. 5. When Father had difficulty with the motions he wanted to address, the court asked Father to "cut to the chase." *Id.* at 8. The court told Father it had reviewed the motions and that it appeared the issues concerned the parties' real estate and business. Husband agreed those were the issues, and the court directed him to "focus on those things." *Id.* When Husband continued to struggle, the court said:

Okay. Okay. Here's what I'm going to do. We're going to shift gears here a little bit. So, just so -- And, Mr. Abuelreish, you're not represented by an attorney, which is fine. That's your —— that's your decision, your business. But so I can kind of make heads or tails of what's going on here, I'm going to have [Wife] go forward with their contempt action first, even though it was filed second in time, and I think that will help me kind of understand the issues. And then I'll be glad to give you full opportunity to make your case after they're done. Okay?

*Id.* at 11-12. When Husband asked if he could finish talking about Abby's Market, the court said:

> Do you understand what I'm going to do? I'm going to let them go forward with . . . their evidence on their contempt motion, and then I'll come back to you and you can present your evidence on yours. Okay? All right. Mr. [Abuelreish]?

*Id.* at 12. Husband responded, "Thank you, Your Honor." *Id.*

[7] After Wife presented her evidence, her attorney argued that "both parties are in contempt of the Court's August 23, 2017, order." *Id.* at 48. When Husband finished presenting his evidence, the court told the parties what it was thinking about ordering. Specifically, the court suggested that the parties reduce the price of the Marital Residence to get it sold, pay off that mortgage, and put the net proceeds in Wife's attorney's trust account. Then, the court suggested that the parties sell the Merton Avenue property in Illinois and use the proceeds from the sale of the Marital Residence to make up any deficit. Finally, the court suggested that Wife would receive $10,000 from the remaining Marital Residence proceeds for the sale of Abby's Market and that the parties would split whatever was left. When the court asked the parties if its suggestion was acceptable, Wife's attorney responded that his attorney's fees needed to be addressed. *Id.* at 58. Wife's attorney said Wife's fees "are about $27,000 right now, net of what she's paid," and asked Husband to pay half. *Id.* at 59. Although Wife's attorney said he had copies of his bills, he never introduced

them into evidence. Husband disagreed with having to pay any of Mother's attorney's fees but agreed with everything else.

[8] Following the hearing, the trial court issued the following order:

> 1. Both Parties have failed to perform obligations required of them under the Decree of Dissolution of Marriage and Mediated Property Settlement Agreement dated August 23, 2017. In particular, the defaults include:
>
>> a. The former marital residence, located at 11711 Rolling Springs Drive, Carmel, IN 46033, which is titled in the name of [Wife], has not been sold;
>>
>> b. The rental property located at 9650 S. Merton Avenue, Oak Lawn, IL 60453, which is titled in [Husband's] name, has not been sold;
>>
>> c. The business, Abby's Market, which was to provide, and which has provided income to both parties was sold by [Husband] for $20[,]000.00, without consent of or accounting to [Wife]; and
>>
>> d. [Husband] has not paid any part of the $20,000.00 proceeds of the Abby's Market sale to [Wife].
>
> 2. [Wife], by her attorney, James Ammeen, shall sell the [Marital Residence]. The proceeds from this sale will be held in escrow in the trust account of [Wife's] counsel, James Ammeen. Mr. Ammeen is hereby empowered to engage the services of a real estate broker of his choosing and to pay expenses reasonably necessary to market the asset for its highest and best use.

3. [Husband] shall sell the property located at 9650 S. Merton Avenue, Oak Lawn, IL 60453. [Husband] is hereby empowered to engage the services of a real estate broker of his choosing and to pay expenses reasonably necessary to market the asset for its highest and best use. The proceeds from this sale will be held in escrow in the trust account of [Wife's] counsel, James Ammeen. If there is a deficiency with regard to a mortgage balance in connection with the sale of the property, the deficiency balance will be paid from the escrowed funds.

4. The Court received evidence that a reasonable attorney's fee in this matter would be between $15,000.00 and $30,000.00 and that [Wife] has incurred approximately $30,000.00 in attorney's fees. In equity, the court concludes that [Wife] should recover half of her attorney's fees. From the escrowed funds, $15,000.00 will be first distributed to [Wife's] counsel for partial payment of [Wife's] attorney's fees.

* * * * *

6. Once the accounting has been accepted, after notice and an opportunity for the parties to be heard, $10,000.00 shall be deducted from [Husband's] share and distributed to [Wife] as her half of the proceeds from the sale of Abby's Market.

Appellant's App. Vol. II pp. 15-17. On November 4, Husband filed a combined Motion to Correct Error and Verified Motion for Contempt Regarding Delisting of the Marital Property, which the trial court denied on December 2.[1]

---

[1] Husband contends that the trial court erred in denying the contempt portion of his motion (which alleged that Wife was in contempt for "delisting" the Marital Residence) because it did not hold a hearing. In support

Husband now appeals.[2] On August 14, 2020, while this appeal was still in the briefing process, Mother filed a notice in the trial court that the Marital Residence sold on August 10 for $290,000 and that the proceeds were being held in her attorney's trust account.

# Discussion and Decision

# I. Order of Presentation

Husband first contends that the trial court erred by allowing Wife to present her case first at the September 2019 hearing. Indiana Trial Rule 43(D) provides that trial courts have discretion in determining the order of the proceedings:

> The trial shall proceed in the following order, **unless the court within its discretion, otherwise directs**: First, the party upon whom rests the burden of the issues may briefly state his case and the evidence by which he expects to sustain it. Second, the adverse party may then briefly state his defense and the evidence he expects to offer in support of it. Third, the party on whom rests the burden of the issues must first produce his evidence

---

of his argument that a hearing was required, Husband cites Indiana Code section 35-47-3-5, which provides that a person charged with contempt must be served with a rule to show cause, which must specify the time and place at which the defendant is required to show cause. The "rule to show cause" provision of Section 35-47-3-5 "fulfills the due process requirement that a [contemnor] be provided with adequate notice and an opportunity to be heard." *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 738 (Ind. Ct. App. 2014) (quotation omitted). This is protection for the person charged with contempt, not for the person filing the contempt. In any event, as explained below, the Marital Residence has since sold.

[2] Husband filed his notice of appeal on December 11. On December 23, he filed a motion for change of judge in the trial court. The trial court denied that motion on January 8, noting that Husband's "appeal is currently pending under cause 19A-DC-02899 at the Indiana Court of Appeals." Appellant's App. Vol. II p. 19. Husband asks us to review the trial court's order, but he did not file a notice of appeal with respect to that order. As such, it is not properly before us.

thereon; the adverse party will then produce his evidence which may then be rebutted.

(Emphasis added). Similarly, Indiana Evidence Rule 611(a) provides that trial courts should exercise reasonable control over the order of the proceedings:

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> > (1) make those procedures effective for determining the truth;
> >
> > (2) avoid wasting time; and
> >
> > (3) protect witnesses from harassment or undue embarrassment.

*See also Isaacs v. State*, 659 N.E.2d 1036, 1042 (Ind. 1995) (stating that trial courts are provided wide latitude to control the flow of the trial proceedings, including the discretion to determine the order of proof and the presentation of evidence), *reh'g denied*.

[11] The trial court did not abuse its discretion in allowing Wife to present her case first. Husband, who was representing himself, and Wife, who was represented by counsel, each filed a contempt petition, with Husband filing his first. At the hearing, the court initially allowed Husband to present his case first. However, when Husband had difficulty doing so, the court had Wife present her case. The court tried the customary order of presentation, assessed that it was confusing

and inefficient, and then exercised its discretion by allowing Wife to present her case. This is exactly the process envisioned by the above rules.

# II. Receiver

[12] Husband next contends that the trial court erred in appointing Mother's attorney as a "receiver" over the Marital Residence. Appellant's Br. p. 19. In support of his argument, Husband relies on Indiana Code section 32-30-5-2, which provides that a court may not appoint an attorney representing a party as a receiver. But the court did not appoint a receiver. Instead, it ordered that "[Wife], by her attorney, James Ammeen, shall sell the [Marital Residence]." Appellant's App. Vol. II p. 16. Accordingly, there is no violation of Section 32-30-5-2.[3]

# III. Ruling on Motion to Modify Agreement

[13] Husband contends that the trial court erred by failing to rule on his December 6, 2018 Petition to Modify Respondent's Obligation to Pay the Mortgage and Expenses of the Marital Residence, which asked the court to order Wife to pay the mortgage on the Marital Residence even though the settlement agreement required him to pay it. Wife responds there is no error on this issue because Husband withdrew this petition on May 13, 2020. *See* Appellee's App. Vol. II p. 75. Although Husband filed a motion to withdraw, it was a motion to withdraw

---

[3] Husband also argues that he doesn't "trust" Wife's attorney to sell the Marital Residence. Appellant's Br. p. 19. However, as noted above, the Marital Residence sold on August 10, 2020.

his Motion to Modify the Dissolution Decree on the Basis of Fraud and Grounds Set Forth in Trial Rule 60(B) filed on December 23, 2019, not his December 6, 2018 petition.

[14] Even assuming the trial court did not formally rule on Husband's December 6, 2018 petition, he is not entitled to any relief on this issue. Husband argued at the September 2019 hearing that Wife should have to pay the mortgage on the Marital Residence, but the court said Husband had to pay it until the house sold. Tr. p. 64. The court was correct. A property-settlement agreement "may only be modified according to the terms of the agreement, if the parties[] consent, or if fraud or duress occurs." *Snow v. England*, 862 N.E.2d 664, 668 (Ind. 2007) (citing Ind. Code §§ 31-15-2-17(c), 31-15-7-9.1). Here, the settlement agreement provides that the parties must agree to any modification, and the parties did not agree to one. *See* Appellant's App. Vol. II p. 26. In addition, Husband did not allege fraud or duress in his December 6, 2018 petition. Accordingly, Husband—not Wife—was responsible for paying the mortgage on the Marital Residence until it sold (which it did on August 10, 2020).

# IV. Attorney's Fees

[15] Finally, Husband contends that the trial court erred in ordering him to pay $15,000 of Wife's attorney's fees. As set forth above, the decree addresses attorney's fees in the event of a "default":

> If either Husband or Wife defaults in the performance of any of the terms, provisions or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the

performance of any provisions of this Agreement, then the party found to be in default shall pay all expenses, including reasonable attorney's fees, incurred in connection with such enforcement proceedings.

*Id.* at 28-29. The court found that both parties were in default and ordered Husband, who was representing himself, to pay half of Wife's attorney's fees. Husband challenges this award on multiple grounds, one of which we agree with. Husband argues that Wife's attorney presented no evidence to support Wife's attorney's fees. Although Wife's attorney said he had copies of his bills, he never introduced them into evidence. In addition, Wife's attorney didn't testify about his hourly fee or how many hours he spent "in connection with" Husband's default (as opposed to Wife's default). Although he said Wife's attorney's fees were "about $27,000 right now, net of what she's paid," he never explained whether those fees were for post-dissolution matters or included any pre-dissolution matters.[4] We therefore reverse the trial court's attorney's fee award and remand this case for the court to determine a reasonable attorney's fee.

[16] Affirmed in part and reversed and remanded in part.

Bailey, J., and Weissmann, J., concur.

---

[4] Wife claims that Husband agreed that $30,000 was a reasonable amount for attorney's fees. At the hearing, Husband said he "saw three, four lawyers, and each one of them, he said, is going to be between 15- to 30,000, and I don't have that money." Tr. p. 62. Husband, however, did not say what this amount included.